612 A.2d 621

**George W. HATCHARD, Petitioner,**

**v.**

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 7, 1992.

Decided July 1, 1992.

Petition For Allowance of Appeal Denied Feb. 10, 1993.

146

Mark S. Love, for petitioner.

Nels J. Taber, Asst. Counsel, for respondent.

Before COLINS and PALLADINO, JJ., and BARRY, Senior Judge.

PALLADINO, Judge.

George W. Hatchard (Petitioner) appeals from an order of the Environmental Hearing Board (EHB) which affirmed the decision of the Department of Environmental Resources (DER) denying a permit application to Petitioner. We affirm.

Petitioner is the owner of commercial property in the Borough of Mt. Pocono, Monroe County, Pennsylvania. The property consists of an office building, a parking lot, and wetlands areas. Mt. Pocono Family Care Center (Center) is one of the tenants in the office building.

In May of 1985, Petitioner placed fill on approximately 5,400 square feet of wetlands on the property to create an additional parking lot for the Center. Petitioner failed to obtain the necessary permits from DER or the Army Corps of Engineers (Corps).

Subsequent to the placement of the fill, the Corps informed Petitioner that filling wetlands was illegal without a permit, and issued a cease and desist order to Petitioner. Petitioner then applied for an after-the-fact federal permit from the Corps, which denied the application on December 24, 1986, and directed Petitioner to remove the fill and restore the area to its previous condition.

On January 7, 1987, Petitioner applied for an after-the-fact state permit from DER under the Dam Safety and Encroachments Act (Act), Act of November 26, 1978, P.L. 1375, *as amended*, 32 P.S. § 693.1–.27.[1] By letter dated January 28, 1988, DER denied Petitioner's permit application, determining that Petitioner did not adequately justify the need to fill in the wetlands, or sufficiently consider alternatives in design, location, and construction to minimize the adverse impacts of the filling. DER concluded that the fill would cause significant environmental damage without creating a concomitant public benefit, and that the proposed project was not water dependent.

1. Petitioner alleges that he was told that he could reapply for a federal permit once he obtained a state permit.

Petitioner appealed to EHB. DER filed a motion for summary judgment, which was denied. A hearing was conducted before EHB on September 27, 1990, after which EHB affirmed the January 28, 1988 determination of DER. Petitioner appealed to this court.

On appeal, the issues raised by Petitioner are: 1) whether EHB erred in determining that Petitioner failed to justify the need to fill in the wetlands, 2) whether EHB erred in determining that DER did not abuse its discretion by soliciting comments from the Pennsylvania Fish Commission and various federal agencies regarding Petitioner's permit application, and 3) whether EHB erred in affirming DER because DER allegedly failed to properly apply or correctly interpret its own regulations in reviewing Petitioner's permit application.

■ Our scope of review of an EHB decision is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether necessary findings of fact are supported by substantial evidence. *Bichler v. Department of Environmental Resources,* 144 Pa.Commonwealth Ct. 55, 600 A.2d 686 (1991).

■ As to the first issue, whether Petitioner failed to justify the need to fill in the wetlands, 25 Pa.Code § 105.13 requires that one who applies for a permit for a project that impacts a wetland shall accompany the permit application with, among other things, maps, plans and analyses specifically required by Chapter 105, and additional information as required by DER. One of the analyses required by Chapter 105 is an alternatives analysis, which is an analysis of alternatives to location, construction and design to avoid or minimize adverse environmental impacts. 25 Pa.Code § 105.13(d)(1)(viii). Chapter 105 also requires a statement on water dependency when the project affects wetlands, as here. 25 Pa.Code § 105.13(d)(1)(x)(C). Dependency is based on the demonstrated unavailability of any alternative location to avoid or minimize the adverse

impact on the environment. 25 Pa.Code § 105.14(7).[2]

Petitioner's permit application dated January 7, 1987 did not include information regarding alternatives or water dependency. Therefore, DER requested Petitioner, by letter dated April 14, 1987, to justify the filling of the wetlands by submitting an alternatives/justification analysis for the proposed parking lot. The DER letter further stated that the requested information "should address the need to fill wetlands and to consider alternatives in location, design, and construction to minimize the adverse impact to [sic] this project upon the environment." April 14, 1987 letter from DER to Petitioner.

On June 9, 1987, Petitioner responded by letter to DER's request for information, stating that the physical infirmity of the Center's patients justified placing the parking lot on the wetlands next to the Center. Petitioner also stated that there were no alternatives to location, and that he was willing to create new wetlands to replace those that he had filled. Petitioner also submitted letters from Center medical professionals who indicated the need for additional parking because of an increase in patients, and the necessity of locating the parking lot on the wetlands.

Petitioner argues that these letters adequately justify the need to place the fill on the wetlands, and correctly indicate that there are no alternatives because the purpose of the project is to provide parking close to the Center for ill and physically infirm patients.

DER contends, and EHB determined, that Petitioner did not adequately justify the need to fill in the wetlands because several alternatives exist to placing the parking lot on the wetlands. These alternatives, as found by EHB, include designating existing parking spaces adjacent to the Center for the exclusive use of patients, extending the parking lot to non-wetland areas for the rental property as a whole, and using the spaces which are presently used by Rent–A–Wreck vehicles as additional parking spaces for the Center. DER also

2. Under the regulations, a water dependent activity, such as a dock, or the lack of any available alternatives to location may constitute justification for placing a project in or near water. 25 Pa.Code § 105.14(b)(7).

contends, and EHB determined, that Petitioner did not justify the need to locate the parking lot in or near water.

Because Petitioner's parking needs could be satisfied by utilization of the available alternatives, and because Petitioner failed to address water dependency or submit an alternatives/justification analysis as required by the Code and as requested by DER, EHB correctly concluded that Petitioner did not adequately justify the need to fill in the wetlands.

■ As to the second issue, whether EHB erred in determining that DER did not abuse its discretion, Petitioner argues that DER, in denying his application, was influenced by comments it solicited from other government agencies, such as the Pennsylvania Fish Commission and the United States Fish and Wildlife Service, regarding Petitioner's permit application. DER argues that it has the authority to consider input from other agencies when reviewing permit applications. We agree.

Section 9 of the Act, 32 P.S. § 693.9, mandates DER to ascertain whether a permit application is in compliance with laws administered by the Pennsylvania Fish Commission. Section 17 of the Act, 32 P.S. § 693.17, and section 105.24 of the Code, 25 Pa.Code § 105.24, authorize DER to consult with federal agencies for the purpose of assuring efficient permitting.[3] Therefore, EHB did not err in determining that DER did not abuse its discretion.

■ As to the third issue, whether DER failed to properly apply or correctly interpret its own regulations, DER's interpretation of its regulations and regulatory scheme is entitled to deference and should not be disregarded unless shown to be clearly erroneous. *Mathies Coal Co. v. Department of Environmental Resources*, 522 Pa. 7, 559 A.2d 506 (1989).

3. *See also Del–AWARE Unlimited, Inc. v. Department of Environmental Resources*, 96 Pa.Commonwealth Ct. 361, 508 A.2d 348, *petition for allowance of appeal denied*, 514 Pa. 644, 523 A.2d 1132 (1986) (DER's reliance on other agencies' findings comports with federal environmental practice).

Petitioner contends that in his June 9, 1987 letter, he offered to mitigate the damage caused by filling the wetlands by creating replacement wetlands, but that DER never considered this offer to mitigate in denying Petitioner's permit application. Petitioner argues that 25 Pa.Code § 105.16(a) requires DER to consider mitigation measures. Section 105.-16(a) states in pertinent part:

If the Department determines that there may be an impact on ... the environment, the Department will consult with the applicant to examine ways to reduce the adverse environmental impact.

Petitioner also argues that the denial of his application was based upon a "presumption" that there were alternatives when no such presumption exists in the regulations.

DER argues that it properly applied its regulations regarding mitigation. Section 105.1 of the Code, 25 Pa.Code § 105.1, defines "mitigation" as an action or actions undertaken to:

(i) ....

(A) Avoid and minimize impacts by limiting the degree or magnitude of the action and its implementation.

....

(ii) *If* the impact cannot be eliminated by following clauses (A)–(C), compensate for the impact by replacing the environment impacted by the project or by providing substitute resources or environments.

25 Pa.Code § 105.1 (emphasis added).

DER argues that the first step to mitigation, clause (i)(A), was attainable in this case because there were alternatives to placing the parking lot on the wetlands to avoid impacting the environment. Therefore, DER argues, it was never necessary to consider Petitioner's mitigation measure, namely subsection (ii) of the mitigation process. We agree with DER that it was not required to consider Petitioner's mitigation measure of replacement wetlands because Petitioner could have satisfied the first step in the mitigation process by utilizing the available alternatives to filling in the wetlands. Therefore, DER properly applied its own regulations.

Moreover, Petitioner's assertion that DER incorrectly interpreted its regulations by denying Petitioner's application based on a "presumption" of alternatives when no such presumption exists in the regulations is without merit. DER found, after conducting a site investigation, and EHB determined, after conducting a hearing, that there were actual, not presumed, alternatives available, and that the denial of the permit application was based, among other things, on the availability of these actual alternatives and Petitioner's failure to submit an alternatives analysis.

Accordingly, the order of the EHB is affirmed.

### ORDER

AND NOW, July 1, 1992, the order of the Environmental Hearing Board in the above-captioned matter is affirmed.