STOYSTOWN BOROUGH WATER AUTHORITY, Petitioner,

v.

PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION and Solar Fuel Company, Inc., Respondents.

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 1999.

Decided April 26, 1999.

As Modified May 14, 1999.

Robert P. Ging, Jr., Confluence, for petitioner.

Barbara J. Grabowski, Pittsburgh, for respondent.

Before DOYLE, J., LEADBETTER, J., and RODGERS, Senior Judge.

DOYLE, Judge.

Before this Court is an appeal by the Stoystown Borough Water Authority (Authority) from an order of the Environmental Hearing Board (Board) granting a motion for summary judgment filed by the Department of Environmental Protection (Department).

The essential facts in this case are not in dispute. The Department issued a deep mine coal mining activity permit to the Solar Fuel Company, Inc. (Solar Fuel) in 1990, and in 1997 issued a renewal of that

permit. The 1997 renewal permit contained revisions which updated the underground permit boundary of the coal mining activity, added one additional groundwater monitoring well and added one hydrologic monitoring point. The renewal permit also carried with it a special condition which established a no-mining zone consisting of an 1800-foot radius above the Authority's deep well water supply. The Authority operates three wells adjacent to Solar Fuel's two coal mines located in this area. One of them is designated as a "deep well" and is approximately 302 feet deep. The other two wells are designated as "shallow wells" and reach a depth of approximately 260 feet. These wells supply the water for approximately 450 residential and 12 business customers within Stoystown Borough.

The Authority appealed the Department's 1997 renewal of the permit to the Environmental Hearing Board on August 20, 1997. The Authority argued that the renewal permit failed to give assurance that the Authority's water supply, and the aquifer from which it draws its water, would not be polluted, degraded or diminished. Additionally, the Authority asserted that the bond required by the Department was inadequate to replace the water supply in the event it did become polluted, degraded or diminished.

The Board granted the Department's motion for summary judgment and dismissed the Authority's appeal. The Department, in support of its motion for summary judgment, argued that the Authority's appeal was limited by the doctrine of administrative finality, and the only issue the Authority could raise before the Board was whether the 1997 renewal permit complied with the amendments to the Bituminous Mine Subsidence and

Land Conservation Act (Act).[1] It is from this final order granting summary judgement that the Authority appeals.

█ On appeal,[2] the Authority contends that the Board committed an error of law and abused its discretion when it granted the Department's motion for summary judgment because: (1) the 1997 permit application failed to comply with the 1994 amendments to the Act; and (2) there were genuine issues of material fact which were in dispute. The Authority argues that the 1997 permit application did not provide adequate information concerning the replacement of the Authority's water supply if mining activity diminished or degraded it, which it was required to do under the 1994 amendments to the Act, and that the Board committed an error of law when it decided this issue at the summary judgment level.

In 1994, the General Assembly adopted amendments to the Act by passing the Act of June 22, 1994, P.L. 357 (Act 54), of which Section 5(j) provides:

> The **department shall require an operator to describe how water supplies will be *replaced*.** Nothing contained herein shall be construed as authorizing the department to require a mine operator to provide a replacement water supply prior to mining as a condition of securing a permit to conduct underground coal mining.

52 P.S. § 1406.5b(j) (emphasis added). The Authority asserts that the Solar Fuel permit application failed to describe how the Authority's water supply would be replaced should it be contaminated as a result of its mining operations. In its permit renewal application Solar Fuel stated:

> In the event of a water interruption, diminution, or contamination, the operator will abide by the requirements of Act

---

1. Act of April 27, 1966, Special Sess., P.L. 31, *as amended*, 52 P.S. §§ 1406.1–.21.

2. Our review is limited to a determination of whether the findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitution-

al rights have been violated. *Adams Sanitation Co. v. Department of Environmental Protection*, 683 A.2d 981 (Pa.Cmwlth.1996), *aff'd on other grounds*, 552 Pa. 304, 715 A.2d 390 (1998).

54 as stated below. If any water losses or contamination occur within the 35° angle of assumption from any mining that has been conducted since August 21, 1994 the operator will provide one of the following within 24 hours;

—a temporary water supply to the complainant; or

—information documenting that the operator was denied access to the water supply to conduct a pre-mining or post mining survey after following the notification requirements specified in Section 5.9(c); or

—information documenting that the supply is still adequate in quantity and quality to serve the premining [sic] uses of the supply or any reasonably foreseeable uses of the supply.

(Solar Fuel permit application, Reproduced Record (R.R.) at 97a.)

The Board, in its July 13, 1998 decision granting the Department's motion for summary judgment, addressed the Authority's argument thus:

we agree with the Department's contention that Solar Fuel adequately described how it intends to comply with the Act 54 requirements when it identified no mining zones and the structures and water supplies to be protected, and because it will provide for temporary water to be supplied in the event that water is adversely affected by its mining operations.

(Board's 7/13/98 Opinion at 6; R.R. at 223a.)

The question of how to interpret Act 54 is an issue of first impression for this Court. Section 2 of Act 54, which defines the legislative purpose behind Act 54, provides as follows:

**This act shall be deemed to be an exercise of the police powers of the Commonwealth for the protection of the health, safety and general welfare of the people of the Commonwealth,** by providing for the conservation of surface land areas which may be affected in the mining of bituminous coal by methods other than 'open pit' or 'strip' mining, to aid in the protection of the safety of the public, to enhance the value of such lands for taxation, to aid in the preservation of surface water drainage and public and private water supplies, **to provide for the restoration or *replacement* of water supplies affected by underground mining,** to provide for the restoration or replacement of or compensation for surface structures damaged by underground mining and generally to improve the use and enjoyment of such lands and to maintain primary jurisdiction over surface coal mining in Pennsylvania.

52 P.S. § 1406.2 (emphasis added). The General Assembly, in its Legislative findings and declaration of policy further stated:

**It is hereby determined by the General Assembly of Pennsylvania and declared as a matter of legislative findings that:**

(1) Present mine subsidence legislation and coal mining laws have failed to protect the public interest in Pennsylvania in preserving our land.

. . . .

(3) Damage from mine subsidence has caused a very clear and present danger to the health, safety and welfare of the people of Pennsylvania.

. . . .

**The Pennsylvania General Assembly therefore declares it to be the policy of the Commonwealth of Pennsylvania that:**

. . . .

**(6) It is necessary to develop an adequate remedy for the restoration and *replacement* of water supplies affected by underground mining.**

52 P.S. § 1406.3 (emphasis added). The provision of Act 54 called into question by this appeal, Section 5(j) of Act 54, directs that the "department shall require an operator **to describe how water supplies**

will be *replaced*." 52 P.S. § 1406.5b(j) (emphasis added). In response to this requirement, Solar Fuel has stated that if the Authority's water supply becomes contaminated, in plain words, it will **either**: (1) supply a temporary water supply, **or** (2) will inform the Authority that it hasn't been able to gain access to the water supply to perform a survey, **or** (3) it will inform the Authority that the contamination is not the fault of Solar Fuel.

■ The position of the Department, taken from its brief, "construes Act 54 to require an operator to describe how a water supply will be replaced. The Department does not construe Act 54 to require an operator to make an actual determination of how a water supply will be replaced" (Department's Brief at 14), and the Department asserts that it is entitled to great deference in its interpretation of Act 54. Although we agree that the Department is entitled to great deference in the interpretation of its regulations and the regulatory scheme, *Mathies Coal Company v. Department of Environmental Resources*, 522 Pa. 7, 559 A.2d 506 (1989), it is also well settled that, where clearly erroneous, such interpretations will be disregarded, *Hatchard v. Department of Environmental Resources*, 149 Pa.Cmwlth. 145, 612 A.2d 621 (1992), *petition for allowance of appeal denied*, 533 Pa. 647, 622 A.2d 1378 (1993); one does not describe how a water supply will be replaced by stating that it will temporarily replace it, *or*, that it will inform the public authority which relies upon the water supply that the reason the water supply has become polluted is not its fault.

■ The explicit and clear meaning of Section 5(j) of Act 54 directs the Department to "require an operator to describe how water supplies will be replaced," 52 P.S. § 1406.5b(j), and Solar Fuel, by acknowledging in its permit application that it *will* comply with the provisions of Act 54, is simply stating an obvious truism; that it *will do* what Act 54 requires it to do. But Act 54 required Solar Fuel to do

something when it completed its renewal application for a mining permit; specifically, to "describe [in the application] how water supplies will be replaced." The Act does not require Solar Fuel to replace the water supply or to agree or state that it will replace the water supply at some future time when, as, and if, the wells become polluted. What Solar Fuel failed to provide (and what the Department is required to seek) is a description of *how* contaminated water supplies will be *replaced*. The mandate of Section 5(j) could not be more clear: "The Department shall require an operator to describe **how** water supplies will be replaced." The response of the Department, that it "does *not* construe Act 54 to require an operator to make an actual determination of **how** a water supply will be replaced" (Department's Brief at 14) (emphasis added), directly contradicts that statutory language. Furthermore, the response of Solar Fuel, that, in the event the wells become polluted, it will either supply a temporary water supply to the community or inform the community that the pollution is coming from another source, does not address the crucial concern established by the General Assembly in Act 54. Of course, if the mining operation is not the source of the pollution or degradation of the wells or the diminished capacity of the water supply, the mining operator would not be responsible for the replacement of that supply. That does not answer what the Act requires, however, that if the mining operation does pollute or degrade the water or diminish the water supply, how will it be replaced.

■ Accordingly, we find that the Board committed an error of law when it granted the Department's motion for summary judgment after concluding that Solar Fuel met its obligations pursuant to Act 54.

Order reversed and case remanded.

## ORDER

NOW, April 26, 1999, the order of the Environmental Hearing Board in the above-captioned matter is hereby reversed, and this matter is remanded to the Board for further consideration and to take such action as the Board deems necessary to enforce the provisions of the Bituminous Mine Subsidence and Land Conservation Act, **as amended**, 52 P.S. §§ 1406.1 –.21, consistent with the Opinion of the Court filed this same date, April 26, 1999.

Jurisdiction relinquished.