**BIRDSBORO AND BIRDSBORO MUNICIPAL AUTHORITY,**
Petitioners,

v.

**DEPARTMENT OF ENVIRONMENTAL PROTECTION and Haines & Kibblehouse, Inc., Respondents.**

Commonwealth Court of Pennsylvania.

Argued Nov. 6, 2001.

Decided Jan. 31, 2002.

Publication Ordered March 28, 2002.

Kenneth Millman, Wyomissing and John Wilmer, Media, for petitioners.

Thomas M. Crowley, Harrisburg, for respondent, Dept. of Environmental Protection.

Terry L. Parish, Reading, for respondent, Haines & Kibblehouse.

Before: DOYLE, President Judge,[1] LEADBETTER, Judge, and FLAHERTY, Senior Judge.

### ORDER

OPINION BY Judge LEADBETTER.

AND NOW, this 28th day of March, 2002, it is ordered that the opinion filed January 31, 2002, shall be designated OPINION rather than MEMORANDUM OPINION, and that it shall be reported.

Birdsboro and Birdsboro Municipal Authority (petitioners) petition for review from an order of the Environmental Hearing Board (EHB) wherein EHB affirmed the decision of the Pennsylvania Department of Environmental Protection (DEP) to grant Haines and Kibblehouse, Inc. (H & K) a noncoal mining permit. For the following reasons, we affirm.

On July 31, 1997, H & K applied to the DEP for a noncoal mining permit for the Birdsboro Materials Quarry Site in Birdsboro. While the permit was pending, DEP designated the area as an Exceptional Value Watershed.[2] To be approved, DEP therefore required the proposed mining operation to be redesigned significantly. Among other alterations, DEP required H & K to raise the floor of a section of the mine and to split the mine into two geographic and temporal sections, Phase 1 and Phase 2. On March 4, 1999, DEP issued H & K a permit to begin mining with 35 special conditions. In special condition 30, DEP prohibits H & K from mining in Phase 2 until and unless H & K produces evidence that Phase 1 mining did not damage wetlands, surface water, or groundwater.[3] In special condition 33, DEP requires H & K to notify petitioners via certified mail when H & K formally seeks DEP permission to begin Phase 2.

Petitioners appealed to the EHB from DEP's decision to grant a permit. The EHB held hearings wherein all parties presented extensive testimony regarding the mining area. Petitioners presented the testimony of Philip Getty, an environmental hydrologist.[4] Mr. Getty reviewed the permit application and other pertinent materials and performed independent re-

---

1. The decision in this case was reached prior to the date that President Judge Doyle assumed the status of senior judge on December 31, 2001.

2. To be considered an Exceptional Value Watershed, land must meet the criteria outlined in 25 Pa.Code § 93.4b.

3. Special Condition number 30 is as follows: Mining activities (mineral extraction) on Phase 2 are prohibited for a minimum of 5 years after permit issuance and until the operator receives written approval from the Department. This approval is contingent on mining activities in Phase 1 having no negative or detrimental effect on Hay Creek, any of its tributaries, including the springs and any drainage associated with the Indian Run Reservoir, any wetlands, or any other surface or groundwater water quality or water quantity associated with this permit. The operator is to submit a request for approval to begin mining activities in Phase 2 at least 60 days prior to the intention of activating mining activities (mineral extraction) on Phase 2. This request should include a narrative summary of all monitoring data submitted and required by the permit special conditions and requirements, which compares the pre-existing data to all the monitoring and other related data obtained by the operator. The Department shall review this request and any other related material (e.g. any information submitted by the Borough of Birdsboro) to determine if mining activities (mineral extraction) can begin in Phase 2.

4. Mr. Getty was qualified as an expert in geology, hydrogeology, and hydrology. Petitioners also presented the testimony of Dr. James A. Schmid, an expert in the fields of ecology and wetlands.

search. He concluded, *inter alia*, that mining in Phase 2 will damage the environment by decreasing the area's water quantity. Mr. Getty based his conclusion in part on test results obtained from a water pumping test performed adjacent to the mining site. Specifically, Mr. Getty calculated that if mining took place as planned under the permit, forty-six percent of the water currently flowing into the wetlands and stream channels around the mines will be effectively diverted.[5]

H & K countered Mr. Getty's testimony with the testimony of John Ross, a civil engineer with H & K, and Jeffrey Peffer, an expert in the fields of geology and hydrology.[6] Mr. Ross disputed Mr. Getty's calculations, testifying that under Mr. Getty's theory, only nineteen percent of the water would be diverted. Mr. Peffer testified that he disagreed with Mr. Getty's conclusions regarding water loss, including those based on the pumping tests. The EHB credited Mr. Ross's and Mr. Peffer's testimony and found as fact that "H & K's mining will not lower the water level," Finding of Fact 57, and it will "increase the base flow of water," Finding of Fact 58.

On appeal to this court, petitioners present four issues for our consideration. First, petitioners assert that the EHB improperly disregarded allegedly uncontested portions of Mr. Getty's testimony without sufficient reason or explanation. Second, petitioners assert that DEP improperly applied 25 Pa.Code § 77.126(a)(3), arguing H & K failed to provide adequate proof that its mining activities would not cause pollution. Third, petitioners assert that DEP violated their due process rights by attaching permit conditions contingent upon future events that are incapable of being addressed in the current appeal or in later litigation. Finally, petitioners argue that EHB violated their due process rights because the ALJ who heard the evidence did not write the adjudication. We address petitioners' arguments *seriatim*.

▉ Petitioners' first argue that Mr. Getty's testimony regarding water loss in Phase 2 went uncontested and that therefore the EHB erred by not finding as fact that water loss will occur. Additionally, petitioners argue that the EHB erred by not adequately explaining why Mr. Getty's testimony was not credited over Mr. Peffer's. It is axiomatic that "[q]uestions of resolving conflicts in the evidence, witness credibility, and evidentiary weight are properly within the exclusive discretion of the fact finding agency, and are not usually matters for a reviewing court." *Pennsylvania Game Comm'n v. Dep't of Envtl. Res., et al.*, 97 Pa.Cmwlth. 78, 509 A.2d 877, 880 (1986). Petitioners fail to recognize that we do not accept invitations to reevaluate evidence and credibility determinations. Even assuming *arguendo* that Mr. Getty's testimony was not contradicted, the EHB is not under an obligation to accept it.[7] *See Feldbauer v. Dep't of Pub. Welfare*, 106 Pa.Cmwlth. 87, 525 A.2d 837, 839 (1987). Additionally, the EHB need

---

**5.** Mr. Getty testified that mining in Phase 2 would result in "a diminished flow of water out of the Birdsboro tributary and wetland 5 and the adjoining area." N.T. at page 103.

**6.** In addition, H & K also presented the testimony of Terry Rightnour, an environmental scientist. The DEP presented the testimony of William A. Capouillez, Section Chief of Oil, Gas, and Mineral Development for the Pennsylvania Game Commission, and Keith A. Laslow, Technical Chief of the DEP's Pottsville offices.

**7.** Petitioners argue that Mr. Getty's testimony relating to the pumping test results was not specifically contradicted. However, Mr. Getty's broader conclusion that there would be any water loss at all was contradicted by Mr. Peffer.

not provide specific reasons for finding one witness credible over another.[8]  *See Sherrod v. Workmen's Comp. Appeal Bd. (Thoroughgood, Inc.),* 666 A.2d 383, 385 (Pa. Cmwlth.1995).

◼ Petitioners next argue that DEP erred in interpreting and applying 25 Pa. Code § 77.126(a)(3).  That section reads as follows:

> **Criteria for permit approval or denial.** (a) A permit, permit renewal or revised permit application will not be approved, unless the application affirmatively demonstrates and the Department finds in writing, on the basis of the information in the application or from information otherwise available, that the following apply:
>
> . . . .
>
> (3) The applicant has demonstrated that there is no presumptive evidence of potential pollution of the waters of this Commonwealth.

25 Pa.Code § 77.126(a)(3).  Petitioners argue that under the regulation H & K had to demonstrate that there was no potential for pollution to occur.  Petitioners argue further that such evidence must be adduced before DEP issues a permit as part of the permit process, not while mining is in progress.  However, "DE[P]'s interpretation of its regulations and regulatory scheme is entitled to deference and should not be disregarded unless shown to be clearly erroneous."  *Hatchard v. Dep't of Envtl. Res.,* 149 Pa.Cmwlth. 145, 612 A.2d 621, 624 (1992).  DEP argues that petitioners' position is untenable because it would virtually eliminate mining in Pennsylvania.  DEP interprets the statute as merely requiring H & K to demonstrate that there is no evidence that presumptively indicates pollution will occur.  This interpretation is reasonable and therefore we will not impose the more onerous interpretation advanced by petitioners.

◼ Petitioners' third argument, that DEP violated their due process rights by imposing special conditions that defer DEP's approval for Phase 2 mining, is also without merit.  First, petitioners clearly have had the opportunity to appeal any issues pertaining to the special conditions, including those that must be met before H & K may mine in Phase 2. Second, special condition 33 requires H & K to notify petitioners when H & K formally seeks DEP's approval to move into Phase 2. Nothing prevents petitioners from litigating H & K's compliance with the special conditions or any other issues germane to DEP's approval of mining activities in Phase 2 at that time.

◼ Lastly, we find meritless petitioners' argument that their due process rights were violated when the ALJ who heard the evidence did not author EHB's adjudication.  In *Cavanaugh v. Fayette County Zoning Hearing Board, et al.,* 700 A.2d 1353, 1355 (Pa.Cmwlth.1997) we stated that:

> While a fact finder's observation of the demeanor of a witness has traditionally been viewed as an important factor in determining credibility, administrative adjudicators are permitted to determine the credibility of testimony from the reading of a transcript. [citation omitted].  Administrative agencies often use a system of adjudication where a hearing examiner or presiding officer takes evidence and the ultimate fact finder is a board or commission, which has the power to make findings of fact based solely on a review of the record. [citations omitted].  An adjudicative method where the ultimate decision in a case is made by an administrative fact finder

---

**8.** Petitioners cite no legal authority in support of this argument.

who did not hear the testimony does not deny a litigant due process of law. [citations omitted].

In the case *sub judice*, ALJ Michelle A. Coleman heard the evidence and then, along with three other EHB members, participated in the adjudication. There is no due process violation where as here the EHB member who heard the evidence did not set pen to paper but clearly fully participated in the adjudication. In fact, even if ALJ Coleman had not participated in rendering the decision, there would still be no due process violation. *Id.*

For the foregoing reasons, we affirm the EHB's order.

### ORDER

AND NOW, this 31st day of January, 2002, the order of the Environmental Hearing Board in the above captioned matter is AFFIRMED.