IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Abeer Abdel Jalil,                     :
            Petitioner      :
                          :
      v.                     :  No. 1856 C.D. 2019
                          :  SUBMITTED: October 23, 2020
Department of Human Services,   :
          Respondent    :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                              FILED: February 22, 2021

      Abeer Abdel Jalil (Recipient), *pro se*, petitions this Court for review of the November 13, 2019 Final Administrative Action Order of the Department of Human Services' (DHS), Bureau of Hearings and Appeals (BHA), which affirmed DHS's decision denying Recipient's request for an exception to the limitation on the number of hours of care that Recipient's family members may provide through the Consolidated Waiver Program (Program) operated by DHS.[2] The issue before this Court is whether denial of the requested exception poses a threat to Recipient's safety, health, and religious beliefs. After careful review, we affirm the BHA.

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

[2] The Waiver Program is authorized by Section 1915(c) of the Social Security Act, 42 U.S.C. § 1936n(c), which enables individuals receiving medical assistance to access services and support through their home or community, rather than in an institutional setting. Regulations governing the Waiver Program are found in 55 Pa. Code §§ 51.1 – 52.65.

# I. Background

Recipient is a 23-year-old woman diagnosed with Retts Syndrome, seizure disorder, apnea, cerebral palsy, and severe intellectual disability. Certified Record (C.R.), Item No. 7, Remand Record at 88. Recipient's receipt of Waiver Program services is governed by an individual support plan (ISP), which recommends that she receive around-the-clock supervision. *Id.* Prior to receiving Waiver Program services, Recipient attended high school from 9:00 a.m. to 3:00 p.m., Monday through Friday. *Id.* at 51. During that period, she was cared for by a nurse during the school day and by a home health aide (aide) in the evenings. C.R., Item No. 10, Notes of Transcript (N.T.), 10/25/19, at 72, 77; Item No. 7, Remand Record at 145. These services ended on July 17, 2018, the day before Recipient turned 21. C.R., Item No. 7, Remand Record at 145. Recipient's Waiver Program services, which became effective July 18, 2018, are provided by the Ellison Nursing Group, LLC (Service Provider). *Id.*, at 83, 97. She currently attends a day program during the week, although the number of days she attends varies. C.R., Item No. 10, N.T., 10/25/19, at 19-20.

Under the Waiver Program, a family member may be paid to provide services when those services constitute extraordinary care, the services provided exceed those which a parent would normally provide, and the services would otherwise be provided by a qualified service provider funded through the Waiver Program. C.R., Item No, Remand Record at 30. A family member is limited to providing in-home and community support or life sharing services. *Id.* A family member may provide a maximum of 40 hours of services per week. *Id.* at 32. A maximum of 60 hours per week is authorized when multiple family members provide services. *Id.* This limitation is known as the 40/60 Rule. *Id.*

An exception to the 40/60 Rule is made when: (1) unexpected circumstances such as inclement weather, sudden illness, or the unplanned extension of medical leave which prevents the arrival of a regularly scheduled worker and another worker is unavailable; (2) situations in which a regularly scheduled worker is terminated or refuses to work without providing adequate notice; or (3) the sudden loss of a caregiver who provided uncompensated support which kept the services provided by a family member at or below the limitations set forth in the 40/60 Rule. *Id.* The exception to the 40/60 Rule is subject to a maximum of 90 days. *Id.* Presently, Recipient's parents are paid to provide 60 hours of her care each week. C.R., Item No. 10, N.T., 10/25/19, at 65.

On August 2, 2018, Recipient appealed the application of the 40/60 Rule and requested a permanent exception to the 40/60 Rule, which would permit her family members to exclusively provide, and be compensated for, her 168 weekly hours of Waiver services. C.R., Remand Record at 19. Recipient asserted that, due to her religious, nutritional, medical, and daily routine needs, non-family members were unable to ensure her current quality of care, level of activity, health, or safety. *Id.* at 25. She maintained that her condition required the presence of two caregivers and constant supervision of her family. *Id.* Recipient averred that she is not comfortable "with people who aren't family[,]" and her previous experience with "outside assistance" had been negative, as her unrelated aides did not know how to properly dress, carry, and feed her. *Id.*

In a letter dated October 18, 2018, DHS indicated that Recipient's situation did not meet the criteria for an exception to the 40/60 Rule. *Id.* at 37. DHS asserted that the 40/60 Rule only applied to the amount of compensation paid to Recipient's

family members providing her services, and the scope of Recipient's services under her ISP had not been reduced or suspended. *Id.*

## A. First Adjudication

During an October 16, 2018 hearing before an administrative law judge (ALJ), Recipient's father, Awad Abdel-Jalil (Father), asserted that he was not aware of the 40/60 Rule. *Id.* at 257. A representative of DHS acknowledged that an exception to the 40/60 Rule was made for Recipient's brother (Brother), who suffers from similar medical complications as Recipient; however, the circumstances behind DHS's grant of the exception was unknown. *Id.* at 262. A representative of Service Provider clarified that Father believed the exception granted to Brother applied to the entire family. *Id.* at 259.

Father testified that he was not informed Recipient could receive nursing care outside the 60 hours of service provided by her family members. *Id.* at 249. He agreed that he could consider nursing assistance; however, Father was not sure he could trust a nurse coming into the home because he had a "bad experience" previously.[3] *Id.* at 250.

In an adjudication issued on November 16, 2018, the ALJ noted that Father had not explored the possibility of in-home nursing care, which would cover the service hours exceeding those for which Recipient's family received compensation. *Id.* at 189. The ALJ further found that she had no jurisdiction to alter the 60-hour service limit provided by Recipient's family. Accordingly, the ALJ denied Recipient's appeal. *Id.* at 190.

---

[3] Father did not specify the nature of this experience and whether it involved care provided to Recipient or Brother.

4

The BHA affirmed the ALJ's decision on December 5, 2018. Recipient's request for reconsideration was denied by the Secretary of Human Services, Teresa D. Miller, on December 28, 2018. Recipient petitioned this Court for review of Secretary Miller's denial of reconsideration on January 24, 2019. *See Abdel-Jalil v. Dep't of Hum. Servs*. (Pa. Cmwlth. No. 84 C.D. 2019).

DHS subsequently determined that the record should be developed further, and a decision rendered on the substantive issues raised by Recipient. *Id.*, Item No. 7, Ex. C-11. Consequently, the matter was remanded to the BHA for further proceedings and the issuance of a new adjudication by order of this Court dated April 11, 2019. *Id.*, Item No. 2, Abdel-Jalil, Order April 11, 2019.

## B. Second Adjudication

The ALJ conducted a remand hearing on September 25, 2019. Father once more testified on Recipient's behalf, as did her mother, Khitam Abdel-Jalil (Mother).

Father testified that Recipient receives 16 hours of in-home and community services and 8 hours of companion services through the Waiver. C.R., Item No. 10, N.T., 9/25/19, at 17. Recipient's services are provided by Father, Mother, and Recipient's older sister. *Id.* Mother's brother provides additional assistance "when he's home." *Id.* at 18. Brother also receives Waiver services. *Id.* at 35. DHS granted Brother an exception to the 40/60 Rule due to his "circumstances."[4] *Id.* at 37, 39.

Mother is responsible for Recipient's care during the week, while Father takes care of Brother. *Id.* at 27, 31. Recipient and Brother participate in a community center program during the week, although the days they attend each week varies. *Id.* at 19-20. Father related that Recipient and Brother also enjoy going to "different

---

[4] The nature of these circumstances was not identified.

places" like the grocery store and the movie theater. *Id.* at 20. Mother must accompany Father on these outings in case Recipient has a seizure. *Id.* at 21. The assistance of "at least" two people is required during Recipient's seizures. *Id.* at 22. Recipient never leaves the home with only one parent or family member; rather, "her family take[s] her outside." *Id.* at 48. Mother and Father help Recipient with bathing and feeding. *Id.* Recipient wears a "mask" at night for her apnea. *Id.* at 23. Father watches over Recipient throughout the night to ensure she is breathing. *Id.* at 22.

Father testified that his family follows Islamic law, which prohibits a man from being alone with an unrelated woman. *Id.* at 25. As a result, Recipient's services and care cannot be provided by an unrelated male aide. *Id.* at 31. While Islamic law would not prohibit an unrelated female from caring for Recipient, Father related that such a circumstance would only work if Mother or his older daughter was home. *Id.* at 26. Because Recipient "doesn't know where [she is]," her presence would not prevent a violation of the restriction against Father being alone with an unrelated female. *Id.* at 28. While Mother is normally with her family at all times, Father asserted that Mother would look for a job outside the home if a female aide were available to care for Recipient, because Mother would not want to "just sit in the home not doing a thing." *Id.* at 28-29.

As Recipient's family speaks Arabic in the home and "very little" English, Father does not believe that a non-Arabic speaking aide would be able to communicate well with Recipient. *Id.* at 32. He conceded that Recipient attended English language schools and the nurses assigned to her did not speak Arabic. *Id.* at 44, 50.

Father testified that his family had issues with the nursing care provided to Recipient when she attended high school. *Id.* at 34. One nurse was arrested for

6

shoplifting while at the mall with Recipient. *Id.* at 34, 42. Another nurse was absent 59 days during the school year. *Id.* at 49. However, Father described one school nurse, who provided Recipient's care for several years, as "excellent" and "wonderful." *Id.* at 51.

When asked during cross-examination why Recipient could not stay at home with an unrelated aide while Father drove Brother elsewhere as part of his community care, Father maintained that Recipient and Brother must travel together, as they attended the same day program. *Id.* at 56. Father stated that the daily schedule his family follows, which he and Mother create in conjunction with Service Provider, allows no flexibility. *Id.* at 59-60.

During her testimony, Mother confirmed that she would look for another job and not stay home "doing nothing" if she was not caring for Recipient during the day. *Id.* at 65. Regarding the family's daily schedule, Mother stated that she and Father take Brother and Recipient out for activities each day and return home at 3:00 p.m., when their youngest daughter comes home from school. *Id.* at 68. Mother prefers to keep Brother and Recipient busy, as they are "used to the idea of going out." *Id.* at 69. While Mother asserted that their schedule is "almost the same" each day, she agreed that it was somewhat flexible, as the activities they participate in vary and may change if Mother "hear[s] about anything going on." *Id.* at 69-71. However, the schedule is largely dictated by the "the convenience of [her children]." *Id.* at 60.

Mother testified that when Recipient attended school, she was cared for by a nurse during the day. *Id.* at 72. After school, Recipient was attended to by an unrelated female aide who stayed in the home until Recipient went to bed. *Id.* at 72, 77. There was no issue with the aide being an unrelated female, because "most of

7

the time" Mother was at home. *Id.* at 77. None of Recipient's assigned nurses or aides were family members. *Id.* at 73. When asked why non-family members could not continue providing Recipient's care, Mother stated that they had "bad experience[s] with aides." *Id.* at 74. Mother felt that she and Father had to finish the work performed by Recipient's aides because they did not perform their jobs correctly. *Id.* She maintained that no one could take care of Recipient and Brother as well as she and Father did. *Id.* at 75. Mother acknowledged that she did not work outside the home during the period Recipient was in school, and she agreed she did not have to work at the present time. *Id.*

In a decision issued on October 25, 2019, the ALJ found that, prior to receiving services through the Waiver Program, Recipient attended school where she received care from nurses who were not family members. C.R., Item No. 6, Final Administrative Order, Findings of Fact (F.F.) Nos. 3-4. Recipient is eligible to receive daily care, which consists of 16 hours of in-home and community support and 8 hours of companion care, and her family members received compensation for providing 60 hours of that care each week. F.F. Nos. 10-11. The 60-hour compensation limit did not represent a change or decrease in the number of hours of support Recipient could receive each week, and DHS took no action to deny, reduce, or suspend Recipient's Waiver Program services. F.F. Nos. 12-13. The ALJ also found that the testimony of Mother and Father was contradictory. F.F. No. 16.

After summarizing the testimony presented at both hearings, the ALJ noted the following contradictions. Father testified that Arabic is spoken at home and he was unsure whether a non-Arabic speaking aide could provide Recipient's care. C.R., Item No. 6, ALJ Adjudication at 5. He agreed on cross-examination, however, that Recipient received care from non-related, non-Arabic speaking nurses while

8

enrolled in high school. *Id.* Father acknowledged that Recipient was enrolled in an English-speaking school for many years. *Id.*

Father maintained that, under Islamic law, he could not be alone in the same space as a female who was not his wife, daughter, or mother. *Id.* He contended that, if an unrelated female aide provided in-home services for Recipient, Mother would have to get a job. *Id.* This would place Father in the position of being alone in the home with a female aide, in violation of Islamic law. *Id.*

Mother testified that, if she is not compensated for providing Recipient's care, she would have to get another job. *Id.* She acknowledged, however, that she was not otherwise employed when Recipient attended high school and received care from nurses at school and she did not have to work if an aide took care of Recipient. *Id.* She felt, however, that "no one" could take care of Recipient like she and Father do. *Id.* Mother testified that Recipient received after-school care at home from non-related aides, and these non-family aides were present in the home until Recipient went to bed. *Id.* Mother's reason for rejecting care from an unrelated aide was based on prior bad experiences with some aides and Mother related that she ended up doing much of the aides' work. *Id.*

The ALJ found that Recipient's family members were never compensated for providing 168 hours of Recipient's Waiver Program services, and there was no dispute that their compensation was limited to a maximum of 60 hours per week. *Id.* at 11. The Waiver Program provides 3 exceptions to the 40/60 Rule. These exceptions include: 1) unexpected circumstances such as inclement weather or sudden illness which prevent a regularly scheduled worker from arriving and where a replacement worker is not available; 2) a situation in which a regularly scheduled worker has been terminated or refuses to provide care and adequate notice has not

9

been given; and 3) the sudden loss of an uncompensated caregiver whose support kept the compensated services provided by family members at or below 40/60 hours per week. *Id.* at 10. The ALJ found that neither Recipient nor her family members met any of the exceptions to the 40/60 Rule. *Id.*

The ALJ acknowledged that DHS granted Brother an exception to the 40/60 Rule; however, no evidence was presented which established the type of exception granted or the reasons for the exception. *Id.* at 11.

With regard to Recipient's argument that care provided by non-family members represented a threat to her health and safety, the ALJ noted that Recipient's sister is only able to assist Mother and Father in the evenings and on weekends. *Id.* at 11. Thus, Father and Mother are primary caretakers for both Recipient and Brother, neither of whom is able to walk or speak, and who both suffer from a variety of medical complications, including seizures, intellectual disabilities, and cerebral palsy. *Id.* As a consequence, Father and Mother provide 168 hours of care for Brother and 60 hours of care for Recipient. *Id.*

Given that Father and Mother are the sole providers of care during the day, the ALJ felt that the assistance of another aide would be helpful, particularly in light of Father's testimony that two or more people are needed when Recipient has a seizure, and such a circumstance could arise while Mother or Father is attending to Brother's needs. *Id.* at 11-12. In addition to caring for Recipient and Brother during the day, Father testified that he watches over Recipient during the night to ensure she is breathing adequately. *Id.* at 12. The ALJ questioned how Father fared with such a schedule and suggested the resultant lack of adequate rest could lead to impairment of Father's judgment. *Id.* Given these circumstances, the ALJ concluded that Recipient's interests would be best served if her parents accepted the

assistance of an unrelated aide or aides, who could provide the additional 108 hours of Waiver Program services to which Recipient is entitled. *Id.*

The ALJ was similarly unpersuaded by Recipient's argument that the presence of an unrelated aide presented a threat to her religious beliefs. *Id.* at 13. Father clearly objected to Recipient receiving care from any unrelated aide. *Id.* at 12. He agreed, however, that Islamic law would permit a female aide to take care of Recipient, and a female aide could be in the home if Mother or Recipient's sister was present. *Id.* Both Mother and Father testified that Recipient was cared for in high school by nurses who were not family members and who did not speak Arabic. *Id.* at 13. Father's testimony that no unrelated aides took care of Recipient at home was contradicted by Mother's testimony that an unrelated aide took care of Recipient at home after school and remained with her until bedtime. *Id.*

Given that Mother is always present, as she and Father both provide Brother's care, the ALJ concluded that the presence of an unrelated female aide would not present a problem. *Id.* Any alleged inflexibility in Mother and Father's weekly schedule was dismissed, as Mother testified the schedule was largely based on the "convenience of the kids." *Id.*

While Father testified that Mother would seek employment outside the home in the event another person provided Recipient's care, Mother presented conflicting testimony that outside work was not necessary. *Id.* Rather, Mother's prior experience with Recipient's unrelated caregivers led her to conclude that no one could care for Brother and Recipient as well as she and Father could. *Id.* Furthermore, Mother did not work outside the home when Recipient was enrolled in high school and not yet receiving Waiver Program services. *Id.*

11

In light of the testimony and evidence presented, the ALJ determined that Mother's and Father's objections to utilizing the services of an unrelated aide were based on personal preference and their lack of confidence in the professional skills of any other provider. *Id.* Accordingly, the ALJ concluded that DHS correctly enforced the 40/60 Rule and no exception should be granted. *Id.*

BHA affirmed the ALJ's decision on November 13, 2019. DHS Secretary Miller denied Recipient's request for reconsideration on December 13, 2019. This appeal followed.[5]

## II. Analysis

Recipient argues that DHS erred in "reducing" the hours of Waiver Program services her family members may provide. Recipient Br. at 6. She maintains that DHS previously granted her an exception, which permitted her family members to provide 168 hours of care and DHS has failed to justify its withdrawal of that exception. Recipient contends that the "newly imposed" reduction in hours, and the introduction of non-family caretakers, threatens her health, safety, and religious beliefs in violation of "federal and state rules and the due process clause of the U.S. Constitution," and Section 1902(a)(10)(B) Social Security Act,[6] which requires that any medical assistance provided to Recipient may not be less than that made

---

[5] This Court's standard of review is limited to determining whether the BHA's adjudication is supported by substantial evidence, whether the decision is in accordance with applicable law, or whether constitutional rights have been violated. *L.H. v. Dep't of Hum. Servs.*, 197 A.3d 310, 312 n.4 (Pa. Cmwlth. 2018).

[6] 42 U.S.C. § 1396a(a)(10)(B).

12

available to any other such individual.[7] *Id.* at 9. Recipient also alleges that DHS's failure to grant an exception to the 40/60 Rule violates Section 1902(a)(17) of the Social Security Act,[8] which mandates that DHS provide reasonable standards for determining Recipient's eligibility for, and the extent of, medical assistance provided.

Recipient concedes that care provided by an unrelated female aide is permissible under Islamic law. Such a situation remains problematic, however, as Father provides care for Brother. In the event Mother would have to leave the home to run errands, Father would be placed in the position of violating *his* religious beliefs by remaining in the home with the unrelated female aide.

Recipient has misapprehended the impact of DHS's decision. There is no evidence to support Recipient's assertion that DHS reduced the number of service hours she may receive under the Waiver Program. To the contrary, Recipient's most recent ISP specifies that "[t]here are no plans to reduce [Recipient's services and support] at this time[,] as it will provide a health and safety concern[.]" C.R.,

---

[7] Recipient raises a second argument in her principal brief, in which she suggests that the introduction of non-family caretakers will increase her and her family's risk of exposure to COVID-19 virus. As this issue was not addressed in the BHA's determination, it is not before this Court for review.

Recipient's argument that DHS violated her due process rights under the U.S. Constitution was first raised in Recipient's January 24, 2019 petition for review filed with this Court. Issues cannot be raised for the first time on appeal pursuant to both section 703(a) of the Administrative Agency Law, 2 Pa.C.S. § 703(a) (a party may not raise upon appeal any question not raised before the agency), and Rule 1551(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1551(a) (providing that "no question shall be heard or considered by the court which was not raised before the government unit"). Accordingly, this issue is waived, and this Court will not address it further.

[8] 42 U.S.C. § 1396a(a)(17).

Remand Record at 91. Recipient's decision to have Waiver Program services performed exclusively by her family members does not translate into a refusal by DHS to provide them. The only limitation imposed by DHS relates to the number of hours for which Recipient's family members may be reimbursed for providing Waiver Program services, and Recipient presented no evidence that DHS ever granted her an exception to the 40/60 Rule.

Recipient has likewise failed to substantiate her allegations that DHS violated the provisions of Section 1902(a) of the Social Security Act. Section 1902(a)(10)(B) provides that a state plan for medical assistance must provide that any assistance made available to one individual may not be less in amount, duration, or scope than that made available to a similarly situated individual. 42 U.S.C. § 1396a(a)(10)(B). Recipient has not demonstrated that the Waiver services provided in her ISP are less than that made available to another such individual. She is free to take advantage of the Waiver Program services at her disposal. The degree to which Recipient's parents are reimbursed for providing Waiver services does not reduce the amount, duration, or scope of services to which Recipient could avail herself, if she so chose.

Recipient's argument that DHS violated Section 1902(a)(17) of the Social Security Act also fails. Section 1902(A)(17) requires that a state plan for medical assistance include reasonable standards for determining eligibility for, and the extent of, medical assistance available. Recipient has not argued that DHS has imposed eligibility standards that prevent her from obtaining necessary Waiver Program services. Her quarrel is with DHS's decision to deny her an exception to the 40/60 Rule.

Recipient is correct that, per the ISP, she has the "right to select qualified willing providers" and Recipient can choose another provider "at any time." C.R.,

Item No. 7, Remand Record at 84. Recipient does not have the concomitant right, however, to direct payment of services to her family members in excess of the limitations set forth in the 40/60 Rule. The ALJ found, and Recipient has not argued to the contrary, that Recipient did not meet the any of the exceptions to the 40/60 Rule. Accordingly, we discern no error in the ALJ's decision to deny her appeal.

With regard to whether DHS's decision denying Recipient's request for an exception to the 40/60 Rule violated her religious beliefs, the ALJ reviewed the testimony presented by Mother and Father and determined that their decision to provide all of Recipient's Waiver Program services was a matter of personal preference. It is well established that questions resolving conflicts in the evidence, witness credibility, and evidentiary weight are within the exclusive discretion of the fact-finding agency, and not usually matters for a reviewing court. *Birdsboro & Birdsboro Mun. Auth. v. Dep't of Env't Prot.*, 795 A.2d 444, 448 (Pa. Cmwlth. 2002).

To that end, the record supports the ALJ's conclusion that personal preference guided Recipient's request for an exception to the 40/60 Rule. Although both her parents expressed concern with the quality of care provided by Recipient's previous nurses and aides, they acknowledged that unrelated female aides cared for Recipient in the home after school until bedtime. Neither Mother nor Father testified that, during this period, Father was placed in a position where he was left alone with one of Recipient's unrelated female aides. Recipient's school nursing care and home health aide services ended on July 17, 2018, after which date she began to receive Waiver Program services. Recipient filed her appeal seeking the 40/60 Rule exception approximately two weeks later, on August 2, 2018. There is no evidence demonstrating that Recipient's circumstances changed in such a short period of time

15

that would justify her concern that Father would be left alone with a female aide. Father's speculation that a non-Arabic speaking aide could not effectively communicate with Recipient is belied by his praise of an English-speaking nurse who cared for her over the course of several years.

It is worth noting that the complication presented here implicates Father's exercise of his religious beliefs, not Recipient's. Waiver Program services are provided to Recipient, not Father, and both Father and Mother agreed that Islamic law does not prohibit Recipient receiving care from an unrelated female aide. The overarching theme to Mother's and Father's testimony was that they provide the best care for Recipient. The ALJ's conclusion that personal preference, and not religious concerns, drove their decision to provide Recipient's Waiver Program services, is amply supported by the record. Accordingly, we affirm the BHA.

 

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Abeer Abdel Jalil,                        :
                    Petitioner            :
                                          :
        v.                                :    No. 1856 C.D. 2019
                                          :
Department of Human Services,             :
                    Respondent            :

## **O R D E R**


AND NOW, this 22nd day of February, 2021, the November 13, 2019 Final Administrative Action Order of the Department of Human Services' Bureau of Hearings and Appeals is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge