**TRI–STATE TRANSFER COMPANY, INC., Petitioner,**

v.

**DEPARTMENT OF ENVIRONMENTAL PROTECTION TINICUM TOWNSHIP, and ECO, Inc., Respondents.**

**Tinicum Township, Petitioner,**

v.

**Department of Environmental Protection, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1998.
Decided Jan. 8, 1999.

---

Barry W. Sawtelle, Wyomissing, for petitioner.

Kenneth A. Gelburd, Conshohocken, for respondent, DEP.

Charles W. Elliott, Easton, for respondent, ECO, Inc.

Robert Sugarman, Philadelphia, for respondent, Tinicum Township.

Before DOYLE, J., PELLEGRINI, J., and RODGERS, Senior Judge.

DOYLE, Judge.

Before this Court is the appeal of Tri–State Transfer Company (TST) and the cross-appeal of Tinicum Township (Township) from an order of the Environmental Hearing Board (EHB), which determined that the Department of Environmental Protection (Department) abused its discretion in allowing TST to renew its permit to operate a municipal waste transfer station.[1]

The relevant facts as found by the EHB are summarized as follows. In 1976, the Department issued solid waste permit no. 100972 (hereafter referred to as the permit or TST's permit) to T.R.A.S.H., Inc. The permit would allow T.R.A.S.H. to construct and operate a municipal waste transfer station on a site in the Township. T.R.A.S.H., however, did not construct the facility and, in August of 1982, the Department reissued the permit to TST.

The Township filed an appeal with the EHB challenging the Department's decision to reissue the permit to TST. Thereafter, the

---

1. During the time period relevant to this appeal, the term transfer facility was defined under 25 Pa.Code §271.1 as "[a] facility which receives and processes or temporarily stores solid waste at a location other than the generation site...." Also, the term "municipal waste is defined in that same section as [g]arbage, refuse, industrial lunchroom or office waste and other material, including solid, liquid, semisolid or contained gaseous material resulting from operation of residential, municipal, commercial or institutional establishments and from community activities....

25 Pa.Code §271.1.

parties entered into a settlement agreement in June of 1983 that allowed TST to retain the permit and construct the transfer station in return for certain modifications to the design of a building TST intended to erect on the site.

Although TST was free to build and operate the transfer station under the terms of the 1983 settlement, it never completed construction of the facility and never processed any municipal waste at the site. In fact, development of the waste transfer station has not progressed beyond laying footers for the proposed building, the installation of septic systems and depositing fill for an access road.

In 1988, the Department's regulations governing the transfer and disposal of municipal waste were completely overhauled and significantly expanded. The new regulations promulgated by the Department generally required persons holding solid waste permits to either upgrade their facilities or close them down. Most important for purposes of the instant appeal, the new regulations provided that,

> [i]f no municipal waste is processed or disposed at a facility within 5 years of the date of issuance by the Department of a permit for the facility, the permit is void.

25 Pa.Code §271.211(e).

After the new regulations were promulgated, the Department determined that TST could not operate the transfer facility until it was upgraded to meet the design and operating standards of the 1988 regulatory scheme. Accordingly, on September 24, 1990, the Department issued a unilateral modification of TST's permit which stated that, because TST did not construct the waste facility within five years of the issuance of the permit, TST could not operate the facility until a "permit modification" was approved. TST appealed the Department's unilateral modification of its permit to the EHB. This appeal was ultimately settled, and, under the terms of a consent order and adjudication, TST agreed (1) to submit to the Department by July 1, 1992, an application for major modification and renewal of its permit, and (2) that it would not construct the waste transfer station prior to receiving the department's approval of that application.

In March of 1993, TST filed an application for renewal of the permit, but it did not file the application for major modification of the permit as required by the terms of the consent order. Nevertheless, on November 20, 1995, the Department granted TST's application and renewed the permit. The Department determined that the renewal was proper, reasoning that the regulation at 25 Pa. Code §271.211(e) did not apply to the permit because it was first issued before the 1988 regulations were promulgated.

Thereafter, the Township and ECO, Inc. (ECO), a nonprofit environmental organization, filed separate appeals to the EHB from the Department's decision to renew the permit. The EHB consolidated the appeals and conducted extensive hearings in this matter. On December 8, 1997, the EHB issued an order that sustained the appeals and voided the permit. The EHB reasoned, among other things, that the 1988 regulations applied to TST's permit and, under 25 Pa.Code §271.211(e), the permit was void for the reason that TST had never processed or disposed of any waste at the site since the permit was first issued.[2] Because the permit was void, the EHB concluded that the Department abused its discretion in renewing it. The appeal by TST and the Township's cross appeals followed; ECO is participating as an intervenor in this appeal.

In its appeal, TST contends that the EHB erred as a matter of law in determining that the permit was void under 25 Pa.Code §271.211(e) because (1) the retroactive application of the 1988 regulation to its permit constitutes an unconstitutional and illegal

---

**2.** The EHB found that the Department abused its discretion in renewing the permit for the following additional reasons: (1) the site plan for the transfer facility did not include all items mandated by the Department's regulations; (2) the Department failed to adequately review TST's application in that it did not conduct an adequate environmental assessment and did not ensure that other environmental statutes would not be violated; (3) the Department did not explicitly require compliance with flood proofing requirements as a condition of the permit; and (4) the Department failed to require TST to erect a fence around the perimeter of TST's proposed facility.

taking of a vested property right, and (2) the EHB failed to give deference to the Department's interpretation of the 1988 regulations. On the other hand, the Township contends in its cross appeal that, even if the EHB's conclusion that the permit was void was erroneous, the EHB properly found that TST did not satisfy the criteria for renewal of the permit. *See* footnote 2 *supra.*

Initially, we observe that, assuming that the regulation does apply to these circumstances, TST's permit is clearly voided by 25 Pa.Code §271.211(e). The record shows that approximately nineteen years passed between 1976, when the permit was first issued, and 1995, when the Department renewed the permit. And, approximately seven years passed from the date that the 1988 regulations were promulgated to the date the permit was renewed. The EHB found as fact that TST never constructed the waste transfer facility on the site, and it is undisputed that TST has never processed or disposed of any waste at the site. Therefore, because no municipal waste was processed or disposed of at the facility within five years of the date the Department first issued the permit for the facility, TST's permit is void under 25 Pa.Code §271.211(e).

TST contends, however, that the EHB retroactively applied 25 Pa.Code §271.211(e) to . void its permit and thus engaged in an unconstitutional and illegal taking of its property interest. Specifically, TST believes that

the permit gives it a vested right to use real property as a waste transfer station and that this right cannot be impaired by government regulation, citing *Pennsylvania Northwestern Distributors, Inc. v. Zoning Hearing Board of Township of Moon,* 526 Pa. 186, 584 A.2d 1372 (1991) (zoning ordinance amortizing pre-existing non-conforming uses was per se confiscatory and violated the Pennsylvania Constitution). In response, the Township, ECO, and the Department all assert that TST is raising this issue for the first time on appeal, and, thus, it is waived. After reviewing the record, we agree that this issue is waived.

TST does not specify in the "Statement of the Case" or "Argument" portions of its brief where in the record it raised the regulatory taking issue, which is required by Pa. R.A.P. 2117(c) and 2119(e), and our independent review of the record does not reveal that TST raised this issue before the EHB. Hence, this issue is waived.[3] Pa. R.A.P. 1551(a); *Wing v. Unemployment Compensation Board of Review,* 496 Pa. 113, 436 A.2d 179 (1981); *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974). Furthermore, the "Statement of Question Involved" in TST's brief, in its entirety, is as follows: "Did the Environmental Hearing Board commit an error of law in applying the provisions of 25 Pa.Code [§]271.211 to Appellant's permit in determining that the said

---

3. Even if this issue was properly raised and preserved for our review, it would not succeed. A taking generally occurs when an entity with the power of eminent domain deprives an owner of the use and enjoyment of **property.** *Machipongo Land and Coal Co. v. Department of Environmental Resources,* 719 A.2d 19 (Pa.Cmwlth.1998). However, Pennsylvania Courts have repeatedly held that permits and licenses are a mere privilege, and do not constitute a property right of the holder. *Plowman v. Department of Transportation, Bureau of Driver Licensing,* 535 Pa. 314, 635 A.2d 124 (1993) (driver's license is a privilege); *Crooks v. Pennsylvania Securities Commission,* 706 A.2d 360 (Pa.Cmwlth.1998) (agent's license is not a guaranteed privilege); *1412 Spruce, Inc. v. Pennsylvania Liquor Control Board,* 70 Pa. Cmwlth. 501, 453 A.2d 382 (Pa.Cmwlth.1982) (restaurant liquor license was a privilege and not personal property), *aff'd* 504 Pa. 394, 474 A.2d 280 (1984); *Pennsylvania Public Utility Commission v. Zanella Transit, Inc.,* 53 Pa.Cmwlth. 359, 417 A.2d 860 (Pa.Cmwlth.1980) (certificate of

public convenience is a mere privilege and confers no vested property right). Hence, because the waste permit did not rise to the level of a property interest, TST's regulatory taking argument is without merit.

It is not clear from TST's brief whether it is raising retroactivity as a separate issue from its regulatory taking argument. Nevertheless, we do not believe that the EHB retroactively applied 25 Pa.Code §271.211(e) in this matter. Although the permit was issued in 1976, long before the 1988 regulations were promulgated, the permit was never used and the waste transfer facility was never constructed. Under these facts, we do not believe that TST acquired a vested right in the permit that would shield it from complying with the 1988 regulations. Moreover, as noted by the EHB, it did not have to decide whether TST's permit was void on the effective date of 25 Pa.Code §271.211(e), because the record demonstrates that TST processed no waste at all for more than five years **after** 25 Pa.Code §271.211(e) went into effect.

permit was void." (TST's Brief at 1.) In our view, TST's regulatory taking issue is not set forth in or reasonably suggested by its "Statement of the Question Involved." Therefore, for this additional reason, we will not consider this issue. Pa. R.A.P. 2116(a); *Appeal of Gemstar/Ski Brothers*, 133 Pa. Cmwlth. 115, 574 A.2d 1201 (Pa.Cmwlth. 1990).

Next, TST contends that the EHB erred in not deferring to the Department's interpretation of 25 Pa.Code §271.211(e); namely, that the regulation may not be applied to pre–1988 permits. In TST's view, the EHB, by reaching the contrary conclusion that 25 Pa. Code §271.211(e) applied to TST's permit, merely substituted its judgment for that of the Department. We do not agree.

■ An administrative agency's interpretation of its own regulations is to be given great weight unless the interpretation is plainly erroneous or inconsistent with the regulations. *Carlson Mining Co. v. Department of Environmental Resources*, 163 Pa. Cmwlth. 141, 639 A.2d 1332 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 538 Pa. 675, 649 A.2d 676 (1994). This Court has held that we need not give deference to an agency where its construction of a regulation is contrary to its plain meaning, *Leader Nursing Centers, Inc. v. Department of Public Welfare*, 82 Pa.Cmwlth. 53, 475 A.2d 859 (Pa.Cmwlth.1984), or where the agency ignores the language of its own regulations. *Delaney v. State Horse Racing Commission,* 112 Pa.Cmwlth. 407, 535 A.2d 719 (Pa. Cmwlth.1988).

The EHB rejected the Department's interpretation that 25 Pa.Code §271.211(e) did not apply to TST for the reason that the Department's construction ignored the plain language of the 1988 regulations. The EHB explained as follows:

The 1988 amendments to the Department's solid waste regulations constituted a complete overhaul of the solid waste management program. The old regulations, adopted in 1971 and amended in 1977, provided one regulation specific to transfer stations. 25 Pa.Code §75.27 (repealed). After 1988, an entire chapter in the regulations was devoted specifically to transfer stations. 25 Pa.Code §§279.1– 279.262. The general provisions of the new regulations required existing permit holders to either upgrade their facilities to comply with the new regulatory scheme or close their facilities. 25 Pa.Code §271.211.

. . . .

There is no language in the regulations which provides the Department with any explicit authority to exempt facilities with pre–1988 permits from application of [25 Pa.Code §271.211] subsection (e). In promulgating the 1988 solid waste regulations, it was the purpose of the Environmental Quality Board (EQB) to require more comprehensive and stringent regulations of solid waste management facilities. 18 Pa. Bull. 1601 (April 9, 1988). Where the EQB intended to exempt facilities which had been permitted prior to 1988 from the new requirements, it explicitly did so . . . .

By promulgating Section 271.211, the EQB obviously intended to discourage the building of new facilities under outdated conditions as departmental regulation and technology progressed. Under subsection (e) facilities cannot defer their operation indefinitely and still claim rights under an existing permit . . . .

. . . .

The 1988 regulations allow for the transitioning of existing facilities which were originally permitted under the old regulations. The purpose of such a transition period was to require existing facilities to eventually conform to current regulation . . . . However, there is no evidence of an intent to grandfather unbuilt facilities whose permits had not been finalized. It simply makes no sense to allow such a transition for a facility which existed only on paper and which did not conform to all current regulations.

(EHB decision at 17–19.) (Citations omitted.)

■ After reviewing the applicable regulations, we agree with the EHB's analysis and conclude that the Department's determination that 25 Pa.Code §271.211(e) did not apply to TST's pre–1988 permit is contrary to the plain language of the 1988 regulations. Therefore, the EHB was not required to defer to the Department's interpretation of 25 Pa.Code §271.211(e).

Further, our review of the record shows that the Department has not expressed a consistent interpretation of the 1988 regulations at issue in this matter. In 1990, the Department, when it unilaterally modified the permit, stated that TST's facility had to be upgraded to comply with the 1988 regulations, and it warned TST that, if it did not agree to the modifications, it would assert that the permit was void under 25 Pa.Code §271.211(e). (ECO Exhibit 55.) When the unilateral modification was issued in the Pennsylvania Bulletin, the Department explained:

> Modification was issued due to the fact that the permittee did not construct the facility within 5 years of permit issuance.... The facility cannot operate until a permit modification is approved....

(20 Pa. Bull. 5473 (October 27, 1990); ECO Exhibit 14.) The record also shows that two Department officers, the Chief of the Division of Municipal and Residual Waste and a Facilities Manager in the Waste Management Program, both opined in 1990 that TST's permit had expired because the transfer station was not constructed within five years of the date of the permit's issuance. (Township Exhibit 510; Township's Supplemental Reproduced Record at 20b.) (EHB's decision, Findings of Fact Nos. 19–26.)

 The Department, however, later reversed itself and concluded that 25 Pa.Code §271.211(e) applied only to permits issued under the 1988 regulations. And, contrary to the 1992 consent order, the Department, applying its revised interpretation of the regulations, did not require TST to apply for a major modification of the permit to bring it into compliance with the 1988 regulations. Hence, considering the variety of interpretations of 25 Pa.Code §271.211(e) proffered by the Department in its dealings with TST, we believe that the EHB was not compelled to defer to the Department's revised interpretation of the regulation.

Even if we were to assume for the sake of argument that the EHB should have adopted the Department's view that 25 Pa.Code §271.211(e) does not apply to the permit, we would nonetheless affirm the EHB on the ground that it correctly held that TST's permit lapsed by operation of law under 25 Pa.Code §271.211(f). This regulation, which expressly applies to pre–1988 permits, provides:

> A municipal waste facility ... that was permitted by the Department prior to April 9, 1988 shall have a permit term that expires April 9, 1993. The operator may apply for a permit renewal under [25 Pa. Code] §271.233.

Under 25 Pa.Code §271.233, a permit renewal application must be filed at least 180 days **before** the expiration date of the current permit.

Because TST's permit was issued in 1976, 25 Pa.Code §271.211(f) would establish an expiration date for the permit of April 9, 1993, and 25 Pa.Code §271.233 would require TST to apply for renewal of the permit 180 days **before** that expiration date. It is clear from the facts, however, that TST never submitted an application for renewal of the permit 180 days before April 9, 1993. Instead, TST filed its renewal application on March 9, 1993, approximately 30 days before the expiration date established by 25 Pa. Code §271.211(f). (EHB's Decision, Finding of Fact No. 16.) The EHB properly concluded that TST's permit lapsed, because "by failing to submit a renewal application within 180 days before the expiration of its permit, [TST] lost the right to seek renewal of its permit and instead was required to seek a new permit under the 1988 regulations." (EHB Decision at 20.) Therefore, regardless of whether 25 Pa.Code §271.211(e) applies here, the permit lapsed by operation of law under 25 Pa.Code §271.211(f).

Accordingly, the EHB's order is affirmed.[4]

### ORDER

NOW, January 8, 1999, the order of the Environmental Hearing Board in the above-captioned matters is hereby affirmed.

---

4. Because of our disposition of this matter, we need not reach the issues raised by the Township in its cross appeal.