**EAGLE ENVIRONMENTAL, L.P., Petitioner,**

**v.**

**DEPARTMENT OF ENVIRONMEN- TAL PROTECTION and Jeffer- son County, Respondents.**

**Jefferson County Commissioners, Jeffer- son County Solid Waste Authority, Clearfield–Jefferson Counties Region- al Airport Authority, Petitioners,**

**v.**

**Commonwealth of Pennsylvania, De- partment of Environmental Protec- tion, Eagle Environmental, L.P., John Nordberg, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 2003.

Decided Oct. 9, 2003.

William F. Fox, Jr., Harleysville, for petitioner, Eagle Environmental.

Robert P. Ging, Jr., Confluence, for petitioners, Jefferson Cnty. Solid Waste Auth., et al.

Michael D. Buchwach, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, SIMPSON, Judge and FLAHERTY, Senior Judge.

OPINION BY Judge SIMPSON.

In these consolidated appeals from orders of the Environmental Hearing Board (EHB), Eagle Environmental, L.P., (Eagle) questions whether the EHB erred in upholding a decision voiding its suspended solid waste permit. Jefferson County, Jefferson County Solid Waste Authority, and Clearfield–Jefferson Counties Regional Airport Authority (Local Government Officials) ask whether the EHB erred in dismissing as moot their appeal from the initial grant of the permit in 1996. Agreeing the permit is void because Eagle did not process or dispose of waste within five years of issuance of the permit and Eagle did not seek permit modification within the five-year period, we affirm. Because of our disposition of Eagle's appeal, we dismiss Local Government Officials' appeal as moot.

The parties stipulated to the following facts. In February 1996, the Department of Environmental Protection (DEP) issued a waste management permit (Permit) to Eagle for a new municipal waste landfill in Jefferson County known as the Happy Landing Landfill (Landfill).[1] Notably, Paragraph 34 of the Permit stated:

The approval of the plans and authority granted in this permit, if not specifically extended by [DEP] in writing, shall terminate and be thereafter void if no mu-

---

1. DEP also issued Eagle an Air Quality Plan Approval Permit, a Water Quality NPDES Permit and a Water Obstruction and En- croachment Permit, which relate to the Land-fill.

nicipal waste is disposed at the facility within five (5) years of the date of issuance of this permit pursuant to the requirements of 25 PA Code § 271.211(e).

Reproduced Record (R.R.) at 35a. Following issuance of the Permit, the Pennsylvania Fish and Boat Commission designated three streams near the Landfill as wild trout streams. Based on this designation, DEP determined the Landfill site contained wetlands of "exceptional value." Thus, in September 1996, DEP issued an order suspending the Permit (suspension order). The suspension order provides, in relevant part:

[The Permit] is suspended. Eagle may seek reinstatement and modification of [the Permit] only if no portion of the municipal waste landfill which Eagle seeks to construct and operate is located in or within 300 feet of the wetland areas for which [DEP] has revoked its authorization to fill. . . .

Supplemental Reproduced Record (S.R.R.) at 26b. Eagle appealed the suspension order to the EHB. The EHB denied Eagle's appeal, and this Court affirmed.[2] In June 2002, the suspension order became final when our Supreme Court denied Eagle's petition for allowance of appeal.[3]

While its appeals of the suspension order were pending, Eagle neither constructed the Landfill nor sought modification of the Permit. Eagle did not seek a supersedeas or stay of the suspension order. In addition, Eagle did not request an extension of the Permit.

Eagle neither accepted nor disposed of municipal waste under the Permit. In February 2001, five years after issuance of the Permit, DEP sent Eagle a letter which stated, in pertinent part:

This letter is written in light of 25 Pa.Code § 271.211(e) and condition No. 34 of your [Permit] issued February 9, 1996.

Because no municipal waste has been disposed of at this facility within 5 years of permit issuance, the [Permit] for the [Landfill] is void.

R.R. at 13a.

Eagle appealed to the EHB, asserting: § 271.211(e) (sunset regulation) was inapplicable because, as a result of the suspension order, Eagle was not "under a permit"; DEP's interpretation created an absurd, impossible and unreasonable result; and voiding the Permit conflicted with Eagle's right to apply for a permit modification pursuant to the suspension order.

The EHB rejected these arguments and dismissed the appeal, concluding: (i) regulatory interpretation was not required because the sunset regulation is unambiguous and contains no exceptions; (ii) the five-year regulatory deadline is reasonable because it allows a permittee adequate time to resolve any potential problems; (iii) in addition to litigating the propriety of the suspension order, Eagle could have sought to modify its Permit, but did not to do so; and (iv) the suspension order, which gave Eagle an opportunity to seek modification, did not supersede the sunset regulation.

■ Eagle appeals to this Court,[4] contending: (i) the sunset regulation cannot

---

2. *Eagle Envtl., L.P. v. Dep't of Envtl. Prot.,* (No. 2704 C.D.1998, filed October 19, 2001).

3. *Eagle Envtl., L.P. v. Dep't of Envtl. Prot.,* 569 Pa. 685, 800 A.2d 934 (2002).

4. Our review of an EHB order is limited to determining whether the EHB's findings are supported by substantial evidence and whether constitutional violations or errors of law were committed. *Leatherwood, Inc. v. Dep't of Envtl. Prot.,* 819 A.2d 604 (Pa.Cmwlth. 2003).

operate to void a permit that is under suspension; (ii) DEP's interpretation of the sunset regulation produced an absurd, impossible and unreasonable result; and (iii) the suspension order, which allowed Eagle an opportunity to seek modification, supersedes the sunset regulation.

## I.

### A.

■ Eagle first argues the sunset regulation is inapplicable because it was not "under a permit" as a result of the suspension order. We disagree.

The sunset regulation provides:

If no municipal waste is processed or disposed under a permit within 5 years of the date of issuance by [DEP] of a permit for the facility, the permit is void.

25 Pa.Code § 271.211(e).

Where the words of a regulation are clear and free from ambiguity, the letter of the regulation is not to be disregarded under the pretext of pursuing its spirit.[5] 1 Pa.C.S. § 1921(b); *Highway News, Inc. v. Dep't of Transp.*, 789 A.2d 802 (Pa. Cmwlth.2002). The sunset regulation is clear and free from all ambiguity. It explicitly states that a permit becomes void where a permittee does not process or dispose of waste at a landfill facility within five years of issuance of the permit. The regulation contains no exceptions. As a result, we need not apply the rules of statutory construction to obtain either the meaning of its words or the Environmental Quality Board's intent in promulgating it. 1 Pa.C.S. § 1921(c).

In *Tri–State Transfer Co., Inc., v. Dep't of Envtl. Prot. Tinicum Township*, 722

A.2d 1129 (Pa.Cmwlth.1999), we were asked whether the sunset regulation could be applied retroactively to a permit issued to Tri–State Transfer (TST) before the regulation and renewed by DEP after the regulation was promulgated. The EHB concluded the sunset regulation applied to the permit because the plain language of the regulation did not allow for exemptions. We affirmed. Explaining the sunset regulation was unambiguous, we stated:

Initially, we observe that, assuming that the regulation does apply to these circumstances, TST's permit is clearly voided by [the sunset regulation]. The record shows that approximately nineteen years passed between 1976, when the permit was first issued, and 1995, when [DEP] renewed the permit. And, approximately seven years passed from the date that the 1988 regulations were promulgated to the date the permit was renewed. *The EHB found as fact that TST never constructed the waste transfer facility on the site, and it is undisputed that TST has never processed or disposed of any waste at the site. Therefore, because no municipal waste was processed or disposed of at the facility within five years of the date the [DEP] first issued the permit for the facility, TST's permit is void under [the sunset regulation].*

*Tri–State Transfer Co., Inc.*, 722 A.2d at 1132 (emphasis added). In addition, we agreed with the EHB that:

There is no language in the regulations which provides [DEP] with any explicit authority to exempt facilities with pre–1988 permits from application of [the

---

As noted, Local Government Officials filed a protective appeal.

**5.** The Statutory Construction Act of 1972 applies to regulations codified in the Pennsylva-

nia Code. 1 Pa.C.S. § 1502(a)(1)(ii); *Harrisburg Area Cmty. Coll. v. Pennsylvania State Employees' Ret. Sys.*, 821 A.2d 1255 (Pa. Cmwlth.2003).

sunset regulation] subsection (e). In promulgating the 1988 solid waste regulations, it was the purpose of the Environmental Quality Board (EQB) to require more comprehensive and stringent regulations of solid waste management facilities. 18 Pa. Bull. 1601 (April 9, 1988). Where the EQB intended to exempt facilities which had been permitted prior to 1988 from the new requirements, it explicitly did so . . . .

*Id.* at 1133.

Eagle attempts to distinguish *Tri–State Transfer.* It asserts, unlike TST, which voluntarily chose not to operate under its permit, Eagle was barred from operating under its Permit. This argument fails. As noted by the EHB:

Eagle's argument misses what we believe to be the point of the decision; namely that [the sunset regulation] is not ambiguous and its plain language does not allow for exemptions. Since there are no exceptions, the particular reason why a permittee does not take advantage of its permit is simply not relevant in a proceeding at law.

EHB Adj. at 6. The EHB properly relied on *Tri–State Transfer* for the proposition that the sunset regulation is unambiguous and contains no exceptions; therefore, the factual distinction is irrelevant.

Applying the unambiguous language of the five-year regulatory deadline to the stipulated facts, Eagle's Permit is void. The parties stipulated the Permit was issued on February 9, 1996, R.R. at 17a, and, over the next five years, Eagle accepted no waste for disposal under the Permit. R.R. at 19a. In addition, Eagle did not construct the Landfill while its appeals of the suspension order were pending. R.R. at 15a. The sunset regulation does not authorize DEP to grant extensions as a result of litigation. Because no waste was processed or disposed of at

the Landfill within five years of the issuance, the Permit is void by operation of law. *Tri–State Transfer.*

Eagle also focuses on the phrase "under a permit." It contends, because it did not have an operative permit, the five-year period did not begin to run. Again, we disagree. Although the Permit was suspended, it had not been revoked. It therefore continued in existence. The suspended Permit preserved for Eagle an opportunity to seek modification and reinstatement. Indeed, Eagle belatedly seeks to exercise this opportunity. Because Eagle retained rights under the suspended Permit, including the right to seek modification during the five-year period, we reject its proffered interpretation.

## B.

■ Eagle also contends DEP's interpretation of the sunset regulation is erroneous because it creates an absurd, impossible and unreasonable result. 1 Pa.C.S. § 1922(1) (legislature does not intend a result that is absurd, impossible of execution or unreasonable). Specifically, Eagle asserts it is absurd to interpret the sunset regulation in a way that the five-year period expired while it litigated the validity of the suspension order.

■ "DE[P]'s interpretation of its regulations and regulatory scheme is entitled to deference and should not be disregarded unless shown to be clearly erroneous." *Birdsboro & Birdsboro Mun. Auth. v. Dep't of Envtl. Prot.,* 795 A.2d 444, 448 (Pa.Cmwlth.2002) (quoting *Hatchard v. Dep't of Envtl. Res.,* 149 Pa.Cmwlth. 145, 612 A.2d 621, 624 (1992)). However, we need not defer to DEP where its construction of a regulation is contrary to its plain meaning, or where it ignores the language of its own regulations. *Tri–State Transfer.*

Rejecting Eagle's arguments that DEP's interpretation of the sunset regulation produced an absurd or unreasonable result, the EHB stated:

> By suspending instead of revoking Eagle's permit, [DEP] provided Eagle with the opportunity to modify an existing permit rather than requiring Eagle to submit an entirely new permit application. . . . It is neither unreasonable nor absurd for there to be a time limit on Eagle's right to seek a modification. Indeed, if Eagle were correct, it would be allowed to seek a modification in 2003 of a permit that was issued seven years ago. In fact, Eagle's right to modify would presumably go on indefinitely. It is *that* interpretation that strikes us as unreasonable.

> What Eagle's argument really boils down to is that it would be absurd to interpret the regulation in such a way that the five-year period runs while Eagle chose to litigate the validity of suspension rather than take advantage of its right to pursue a permit modification. *Litigating the suspension and pursuing a modification were not mutually exclusive options. A more conservative, albeit more expensive, business strategy would have been to pursue a modification under protest during the pendency of the litigation* . . . .

> Furthermore, Eagle unquestionably has a right to due process review, but Eagle's rights are not the only rights that are implicated here. The public has a compelling interest in seeing that landfills are constructed with up-to-date methods and technology based upon existing conditions. *Tri–State Transfer* . . . We do not see why this interest should give way to Eagle's rights. A five-year limitation period strikes us as a reasonable balance.

EHB Adj. at 8–10 (emphasis added). Under the suspended Permit, Eagle maintained the option of redesigning its Landfill while litigating the propriety of the suspension order. It chose not to pursue this option. We adopt the EHB's determination that the sunset regulation voids the suspended Permit is neither unreasonable nor absurd.[6]

### C.

■ Eagle also argues its right to modify the suspended Permit superseded the sunset regulation. Again, we disagree.

Under the suspension order Eagle had an opportunity to submit a modified permit application. However, the suspension order did not extend Eagle's right to seek modification indefinitely. Nor did it extend the regulatory deadline set forth in the sunset regulation. Indeed, Condition 34 of the Permit informed Eagle:

> The approval of the plans and authority granted in this permit, if not specifically extended by [DEP] in writing, shall terminate and be thereafter void if no municipal waste is disposed at the facility within five (5) years of the date of issu-

---

**6.** The Pennsylvania Bulletin indicates the sunset regulation as originally proposed provided for permits to lapse after 2 years. Notably, before the final regulation was promulgated, the time period was increased to five years:

> Section 271.211 (relating to term of permits) sets out the Department's requirements for the duration of municipal waste processing or disposal permits. This section has been changed in several ways . . . .

the regulations make a permit void if no municipal waste is processed or disposed at the facility within 5 years of the date of the issuance of the permit. *The EQB increased this time period from the proposed 2–year period in response to concerns that litigation, the length of the construction process, and other factors made the two year period inappropriately short.*

18 Pa. B. 1685 (1988) (emphasis added).

ance of this permit pursuant to the requirements of [the sunset regulation].

R.R. at 35a. At no time did Eagle seek a supersedeas or stay of the suspension order. Nor did Eagle request a permit extension. Regardless, because the sunset regulation is mandatory, *Tri–State Transfer*, DEP did not have discretion to grant a permit extension.[7]

## II.

Shortly after DEP issued the Permit in 1996, Local Government Officials appealed the decision granting the Permit. The appeal was stayed pending the disposition of DEP's suspension order. After the EHB voided the Permit, it dismissed Local Government Official's appeal as moot. Local Government Officials' filed a protective appeal from that decision, but concede the appeal is moot if we affirm the decision to void the Permit. Due to our disposition of Eagle's appeal, the protective appeal filed by Local Government Officials is moot. *See Blevins v. New Garden Township*, 91 Pa.Cmwlth. 207, 496 A.2d 1309 (1985) (event which occurs pending an appeal supports dismissal for mootness if the event renders it impossible for court to grant relief).

For these reasons, we affirm.[8] In turn, Local Government Officials' appeal at 526 C.D.2003 is dismissed as moot.

---

7. Notably, the sunset regulation does not authorize DEP to extend the regulatory deadline for concerns such as litigation. Other environmental permitting regulations explicitly authorize DEP to grant extensions for litigation. *See* 25 Pa.Code § 77.128(b) (relating to noncoal mining permits) ("A permit will terminate if the permittee has not begun the ... activities covered by the permit within 3 years of the issuance of the permit. *[DEP] may grant reasonable extensions of time for commencement of these activities upon receipt of a written statement showing that the extensions of time are necessary if litigation precludes the*

## ORDER

AND NOW, this 9th day of October, 2003, the order of the Environmental Hearing Board at No. 2001–046–L is affirmed. The appeal of Jefferson County, Jefferson County Solid Waste Authority, and Clearfield–Jefferson Counties Regional Airport Authority from the order of the Environmental Hearing Board, dated February 3, 2003 at No. 96–061–L is dismissed as moot.

Judge LEAVITT did not participate in the decision in this case.

*commencement or threatens substantial economic loss to the permitte ....")* (emphasis added).

8. Because of our disposition of this case, we need not address Jefferson County's arguments that: (1) the the letter informing Eagle that its permit was void is not an appealable action; (2) Eagle's appeal is barred by the doctrine of administrative finality; or (3) in light of corporate changes within Eagle there is no viable appellant to prosecute this appeal.