# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maxatawny Township,                    :
              Petitioner          :
                                        :    No. 2369 C.D. 2014
      v.                                   :    Argued: September 14, 2015
                                          :
Department of Environmental            :
Protection,                            :
              Respondent          :

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**              **FILED: October 16, 2015**

This appeal involves a discrete issue of regulatory interpretation. The parties, Maxatawny Township (Maxatawny), and Kutztown Borough and Kutztown Municipal Authority (collectively, Kutztown), however, raise other disputes related to their collaborative efforts at sewage treatment, clouding the matter before us.

Maxatawny petitions for review from a decision by the Environmental Hearing Board (EHB) sustaining the appeal of permittee Kutztown from the Department of Environmental Protection's (DEP) approval of a request for exemption from sewage planning module (Exemption Request) filed by Advantage Point, LLP (Advantage) for new development in Maxatawny. All exemptions require "written certification" as to the current and future capacity of the permittee's conveyance under 25 Pa. Code §71.51(b)(2) (Regulation). Advantage submitted a letter by Kutztown's engineer to qualify. Accepting the letter as the

certification required by the Regulation, DEP approved the Exemption Request. Kutztown challenged the approval because it did not provide a certification. The EHB determined DEP's construction of the Regulation was unreasonable, and it reversed the approval of the Exemption Request.

Maxatawny appealed, arguing the EHB erred in failing to defer to DEP's interpretation of what constitutes a "certification" under its Regulation. Kutztown and Advantage intervened. DEP filed a notice of non-participation.

## I. Background

The relationship between the parties is contentious, involving ongoing litigation before this Court and the Berks County Court of Common Pleas. A review of the parties' history is helpful.

## A. History

The Sewage Facilities Act[1] requires all municipalities to adopt sewage treatment plans, commonly known as Act 537 plans. Typically, municipalities are required to update their Act 537 Plans to account for new development and other changes that impact capacity. Section 5 of the Sewage Facilities Act, 35 P.S. §750.5.

In May 2006, Maxatawny, the Maxatawny Municipal Authority (MMA) and Kutztown entered an Intermunicipal Sanitary Sewage Service and Treatment Agreement (2006 Agreement). Maxatawny last revised its Act 537 plan in 2007 to account for the 2006 Agreement. Reproduced Record (R.R.) at 270a.

---

[1] Act of January 24, 1966, P.L. (1965) 1535, as amended, 35 P.S. §§750.1-750.20a.

2

Relevant here, the 2006 Agreement addressed Maxatawny's use of a 20-inch sewer interceptor line owned by Kutztown (Interceptor Main) for sewage flow for a certain distance before its diversion to a facility in Maxatawny.

Pursuant to the 2006 Agreement, Kutztown agreed to allocate 150,000 gallons per day (gpd) of measured flow within the Interceptor Main to Maxatawny. Kutztown also agreed to provide land for construction of a joint municipal authority, to be called the Saucony Creek Regional Authority (SCRA). In exchange, Maxatawny agreed to construct a treatment facility to provide for the parties' future sewage needs. The 2006 Agreement obligated Maxatawny to convey that facility to SCRA, to be jointly operated with Kutztown, by December 31, 2013. However, Maxatawny did not convey its interest in accordance with the 2006 Agreement. Instead, it retained the treatment facility and continues to operate it. Because Kutztown was excluded from operating the facility, it is not in a position to know the number of connections in Maxatawny and the sewage treatment flow attributable to each connection.

Although the parties continue to operate under the 2006 Agreement, Maxatawny seeks to repudiate it. In separate litigation, Maxatawny challenged the validity of the 2006 Agreement.[2] It is Kutztown's position that Maxatawny cannot use the Interceptor Main if the 2006 Agreement is no longer valid.

_____

[2] Maxatawny Twp. v. Kutztown Borough, 113 A.2d 895 (Pa. Cmwlth. 2015) (reversing decision overruling preliminary objections and remanding for arbitration of contractual dispute on merits).

3

Both Kutztown's and Maxatawny's collection, conveyance and treatment facilities are in compliance with the Clean Streams Law[3] and applicable regulations. According to their prior submissions under Chapter 94 of 25 Pa. Code (relating to municipal waste management), Kutztown and Maxatawny do not have existing hydraulic or organic overloads or five-year projected overloads.

**B. Exemption Request**

The Regulation provides an exemption from revision to the Act 537 plan for new development. Through the exemption process, a new development may seek permission from DEP to be excused from the more extensive sewage facilities planning normally required for a new development. Pursuant to the exemption process, Advantage must satisfy all four criteria set forth in the Regulation. Advantage applied for the Exemption for an apartment building project for student housing (Project). The Project is to consist of three buildings and 337 units, along with a clubhouse facility.

As planned, the Project anticipated approximately 69,000 gpd of sewage would flow into a Maxatawny sewer line. However, Advantage reserved 74,000 gpd of capacity, and reserved 70,000 gallons of water. All of Maxatawny's sewage in the line, including Advantage's sewage, would be measured and then flow into Kutztown's Interceptor Main where it commingles with Kutztown's sewage. After flowing in the Interceptor Main for a certain distance, the amount of sewage corresponding to the amount of measured flow originating from the Maxatawny line is diverted to a sewage facility in Maxatawny operated by MMA.

---

[3] Act of June 22, 1937, P.L. 1987, as amended, 35 P.S. §§691.1-691.1001.

4

The Interceptor Main is the only means by which Advantage's sewage may reach the treatment facility in Maxatawny. Sewage that is not diverted continues to a Kutztown facility.

The relevant timeline of events follows. In February 2014, Advantage submitted the Exemption Request to DEP. Initially, DEP, through Renae Wood in the South-central regional office, rejected the Exemption Request because it did not include a "signed written certification statement from [Kutztown]" regarding sewage flows through its Interceptor Main. R.R. at 118a (Deficiency Letter). In its Deficiency Letter to Maxatawny, DEP included a sample certification form for completion. Although no specific form of certification is required, the sample form asked for the signature of an "authorized" official certifying capacity. R.R. at 5a.

Kutztown asked its engineer, Spotts, Stevens & McCoy (SSM), to review the Exemption Request for the Project. At Kutztown's direction, Darryl Jenkins of SSM (Jenkins) prepared a letter dated April 9, 2014, regarding capacity for the Project. However, the letter contained incorrect information as to Maxatawny's allocated capacity under the 2006 Agreement, and thus erroneously concluded that there would be a shortfall as to current capacity of the Interceptor Main. R.R. at 116a-17a. Kutztown Borough Manager Gabriel Khalife (Borough Manager) advised Jenkins of the error and asked him to redraft the letter to include the proper allocation of capacity provided to Maxatawny under the 2006 Agreement. Borough Manager also asked Jenkins to consider the impact of the dispute regarding the validity of the 2006 Agreement on the current and future capacity accounting for the Project.

5

Jenkins then prepared a second letter addressed to Kutztown, dated April 15, 2014, based on his review of the Exemption Request (Engineer Letter). His competency to determine capacity is undisputed. In the Engineer Letter, Jenkins set forth the current capacity of the Interceptor Main for the load expected by the Project, 69,544 gpd. Ultimately, *he recommended Kutztown request additional specific information from Maxatawny* regarding allocation of capacity. Jenkins also recommended resolving the legal issues surrounding the validity of the 2006 Intermunicipal Agreement as that is the basis for Maxatawny's allocation.

> The Engineer Letter states in pertinent part:
>
> • The [Interceptor Main] has reserve flow capacity of approximately 300,000 [gpd] with 150,000 [gpd] of that amount allocated to transport ultimate flows from [Maxatawny].
>
> • From the 150,000 gpd of available capacity for sewage flows emanating from [Maxatawny], 26,174 gpd of that allocation is in use. Approximately 123,826 gpd of the allocation remains available.

R.R. at 114a.

Borough Manager then forwarded the Engineer Letter to Maxatawny with a cover letter requesting the detailed accounting recommended by Jenkins. R.R. at 194a. Significantly, in the cover letter, Borough Manager requests a detailed accounting of: "the number of existing connections; remaining connections for the committed capacity; and, projected flows, including calculations demonstrating how the flow projections were derived." Id.

Advantage obtained a copy of the Engineer Letter and submitted it to DEP, without Kutztown's permission, to satisfy the certification requirement.

DEP approved the Exemption on April 30, 2014. In the letter granting the Exemption, DEP stated the Project was "exempt from the requirement to revise the official [Act 537] plan for new land development … based in part on municipal and other sign-offs." R.R. at 193a. Essentially, DEP deemed the Engineer Letter a written certification of capacity, signed off on by Kutztown.

Kutztown filed a notice of appeal of DEP's approval to the EHB, arguing DEP should not have granted the Exemption Request because Kutztown did not submit a certification of capacity. Kutztown also asserted DEP erred in not considering the implications of failing to obtain written certification: any Maxatawny sewage that is not diverted at the flow splitter to the SCRA facility will continue to flow to Kutztown's sewage treatment facility downstream.

The EHB held two days of hearings where representatives of Advantage, Maxatawny, Kutztown and DEP testified. Kutztown presented the testimony of Jenkins of SSM, who authored the Engineer Letter, and Borough Manager.

Based on the evidence submitted during the *de novo* hearings, the EHB found DEP interpreted the Regulation "to mean that an applicant for an exemption *must* obtain a certification from the permittee(s) of the sewage facilities that are proposed to be used." EHB Op., 12/16/14, Finding of Fact (F.F.) No. 19 (emphasis in original). Thus, the EHB found the Engineer Letter central to

7

determining whether DEP should have approved the Exemption Request. It noted the following key points from the Engineer Letter:

- The Interceptor Main can flow 300,000 additional gpd.

- Maxatawny is only flowing 26,174 gpd when 150,000 gpd are allocated to it under the 2006 Agreement.

- The Project would use 69,544 gpd.

- Although the Interceptor Main could currently handle the additional flow from the Project, Jenkins was concerned about two things:

    1. Kutztown needed a full accounting of all anticipated flows from all sources to ensure that the 150,000 gpd allocated to Maxatawny would not be exceeded.

    2. It was unclear whether Maxatawny retained a legal right to use the Interceptor Main when the 2006 Agreement was in question.

See EHB Op. at 10, F.F. No. 33.

The EHB focused on the fact that Kutztown did not provide a certification of capacity. The EHB emphasized that Kutztown's intent was clear in that it was seeking more information that would impact capacity, not certifying capacity. Moreover, the testimony showed Kutztown did not authorize the Engineer Letter as a certification. Indeed, the EHB noted DEP's approval was predicated on inaccurate assumptions. Specifically, the EHB found DEP's approval of the Engineer Letter as a certification constituted "willful ignorance on [DEP's] part." Id. at 18.

8

The EHB found DEP's acceptance of the Engineer Letter as a "certification" unreasonable for several reasons. First, the Engineer Letter was an internal analysis of capacity for Kutztown's benefit. That is supported by the fact that the Engineer Letter is not addressed to DEP, Advantage or Maxatawny, and it is consistent with Jenkins' testimony. Second, the Engineer Letter never used the word "certify," nor did it purport to verify known facts. To the contrary, the Engineer Letter posits questions that need to be resolved in order to assess capacity. Third, the letter never affirmatively states that there will not be a five-year projected overload.

Ultimately, the EHB determined the Engineer Letter did not qualify as a certification of capacity for the Interceptor Main. As a result, Maxatawny did not satisfy that criterion for an exemption, and DEP erred in approving the Exemption Request. The EHB reasoned, "[e]ven if a certification is withheld for an improper reason or no reason at all [by the permittee], an exemption is not available under [DEP's] interpretation." EHB Op., Finding of Fact (F.F.) No. 19.

Maxatawny appealed the EHB's adjudication to this Court.[4] Advantage intervened, filing a brief aligned with Maxatawny's position. Kutztown also intervened, asking this Court to affirm. DEP did not participate.

---

[4] Our review is limited to determining whether the EHB committed an error of law, violated constitutional rights, or whether substantial evidence supported its findings. Bethenergy Mines, Inc. v. Dep't of Envtl. Prot., 676 A.2d 711 (Pa. Cmwlth. 1996).

## II. Discussion

The primary issue before this Court is whether the EHB applied the proper standard of review when it did not defer to DEP's interpretation of "written certification" in 25 Pa. Code §71.51(b)(2)(iii). As this appeal presents a question of law, our review is plenary. Tire Jockey Serv., Inc. v. Dep't of Envtl. Prot., 915 A.2d 1165 (Pa. 2007); Eagle Envtl. II, L.P. v. Dep't of Envtl. Prot., 884 A.2d 867 (Pa. 2005).

In addition to challenging the standard of review, Maxatawny contends the EHB erred in other respects. Maxatawny argues the EHB improperly considered the disputes regarding the 2006 Agreement when determining the capacity issue. Maxatawny also asserts the EHB's adjudication is not supported by substantial evidence, and that the EHB ignored substantial evidence in reaching its conclusion. Lastly, Maxatawny claims the EHB should have barred Kutztown from relief under the unclean hands doctrine.

### A. EHB's Lack of Deference to DEP's Interpretation
### 1. Contentions

Maxatawny first argues the EHB applied an improper standard of review because DEP did not abuse its discretion in interpreting the term "certification." It asserts DEP was permitted to accept capacity calculations from Kutztown's engineer to satisfy the regulatory criterion. Maxatawny also contends the EHB erred in stating a municipality may refuse to certify capacity for "any reason or no reason." Pet'r's Br. at 30; see EHB Op. at 5, F.F. No. 19.

10

Advantage joins Maxatawny's argument. Advantage adds that the EHB erred in focusing on whether Kutztown intended to certify capacity in the Engineer Letter when the existence of capacity is a pure matter of fact.

Kutztown counters that the EHB properly determined a certification of capacity was required from Kutztown as the permittee of part of the collection system Advantage proposed to use. It contends DEP erred in accepting the Engineer Letter as the certification required when Kutztown did not authorize or intend the letter to serve as certification. Kutztown also argues DEP was unreasonable in disregarding its intent in requesting the Engineer Letter.

### 2. Roles of EHB and DEP

The EHB and DEP have different roles regarding environmental compliance. The EHB's jurisdiction is set forth in the Environmental Hearing Board Act (EHBA).[5] The EHB is the administrative judicial branch that, "hold[s] hearings and issue[s] adjudications ... on orders, permits, licenses or decisions of [DEP]." Section 4 of the EHBA, 35 P.S. §7514(a). Its duty is to determine whether DEP's action can be sustained or supported based on the evidence submitted to the EHB. Pa. Trout v. Dep't of Envtl. Prot., 863 A.2d 93, 105 (Pa. Cmwlth. 2004). DEP is the agency with the duty and authority to administer and enforce environmental laws, including the Sewage Facilities Act and Section 1917-A of the Administrative Code of 1929,[6] and the rules and regulations promulgated thereunder. Tire Jockey Serv.

---

[5] Act of July 13, 1988, P.L. 530, as amended, 35 P.S. §§7511-7516.

[6] Act of April 9, 1929, P.L. 177, added by the Act of December 3, 1970, P.L. 834, as amended, 71 P.S. §510-17.

11

As an agency responsible for enforcing and implementing environmental statutes and regulations, DEP is "in the best position to interpret" its own regulations. Id. "DE[P]'s interpretation of its regulations and regulatory scheme is entitled to deference." Eagle Envtl., L.P. v. Dept. of Envtl. Prot., 833 A.2d 805, 809 (Pa. Cmwlth. 2003) (citation omitted); Birdsboro & Birdsboro Mun. Auth. v. Dep't of Envtl. Prot., 795 A.2d 444, 448 (Pa. Cmwlth. 2002) (same). Accordingly, DEP's interpretation "is given controlling weight unless it is clearly erroneous." Wheeling-Pittsburgh Steel Corp. v. Dep't of Envtl. Prot., 979 A.2d 931, 937 (Pa. Cmwlth. 2009).

However, the EHB does not need to defer to DEP where its construction of a regulation is contrary to its plain meaning, or where it ignores the language of its own regulations. Eagle Envtl. "[A]dministrative agencies are no more free to ignore their regulations than are persons sought to be regulated." Delaney v. Pa. Horse Racing Comm'n, 535 A.2d 719, 722 (Pa. Cmwlth. 1988).

The EHB's duty is not to substitute its judgment for that of DEP. Pequea Twp. v. Herr, 716 A.2d 678 (Pa. Cmwlth. 1998). Rather, the EHB must determine if DEP's challenged action constituted an abuse of discretion, arbitrary, capricious or contrary to law. Id.

### 3. Analysis of "Certification"

The Regulation at issue here provides in pertinent part (with emphasis added by underline and bolding):

(b) Except for new land developments proposing the use of retaining tanks, exemptions from sewage facilities

12

planning for new land development will be processed as follows:

****

(2) Revisions for new land development and supplements are not required for subdivisions proposing a connection to or an extension of public sewers when **all** of the following have been met:

****

(iii) The applicant has provided written certification from the permittees of the collection, conveyance and treatment facilities to the municipality in which the subdivision is located and [DEP] or delegated agency with jurisdiction over the municipality in which the subdivision is located that there is capacity to receive and treat the sewage flows from the applicant's proposed new land development **and** that the additional wasteload from the proposed new land development will not create a hydraulic or organic overload or 5-year projected overload.

25 Pa. Code §71.51(b)(2)(iii).[7]

Kutztown is the permittee of a portion of the conveyance system, the Interceptor Main. As permittee, Kutztown's role is limited. Kutztown verifies the sufficiency of capacity in its Interceptor Main based on existing and projected flow. DEP relied on the Engineer Letter as the "written certification" from Kutztown.

The written certification is required to certify that the permittee has both *current* capacity to convey the sewage, and *future* capacity. That both existing and projected capacity must be certified is clear from the use of the conjunction "and" in the Regulation. Id.

---

[7] Kutztown did not dispute that Advantage satisfied the other three elements (i, ii, and iv) required for an exemption under the Regulation.

The plain meaning of "certify" is "to attest authoritatively or officially, to inform with certainty." Penn Square Gen. Corp. v. Lancaster Cnty., 936 A.2d 158, 173 n.12 (Pa. Cmwlth. 2007) (citation omitted). Attestation is required as part of a certification. See Cotter v. Dep't of Transp., Bureau of Driver Licensing, 703 A.2d 1092 (Pa. Cmwlth. 1998) (explaining certification of official records under 42 Pa. C.S. §6103).

**a. Content**

On its face, the Engineer Letter does not contain the information required by the plain language of the Regulation. The two paragraphs of the Engineer Letter that DEP relied on as sufficient for certification purposes, quoted on page 6 of this opinion, do not address projected capacity or certify that no overload is projected into the next five years. To the contrary, the Engineer Letter raised concerns regarding proposed or projected flow as follows:

> Kutztown should request a full accounting from [Maxatawny] of the aggregate amount of sewage flows which are proposed to be connected to the [Interceptor Main] to ensure that the prescribed allocation of 150,000 gpd of flow is not exceed [sic]. All flows entering the Kutztown system through the Koffee Lane connection are to be diverted to the SCRA facility, and [Kutztown] should have assurance that no more than 150,000 gpd of flow will be contributed. It is important to confirm committed capacity, actual connections, remaining connections for the committed capacity, and proposed connections, inclusive of the [Project]. [Kutztown] is aware that all of the mandated connections within [Maxatawny] have not yet been completed, and the Year 2013 Chapter 94 Report flows for the [MMA] cannot be considered final or definitive since usage will continue to increase as additional mandated connections for filed on-lot systems are made.

14

R.R. at 114a-15a (emphasis added).[8]  Thus, despite confirming the existing capacity "at this time," R.R. at 114a, to accommodate the Project, the Engineer Letter outlines a number of outstanding facts that would impact projected capacity.[9]

The EHB noted that the tone of the Engineer Letter sought additional information regarding Maxatawny's use of its allocated capacity.  The EHB determined DEP precluded Kutztown from obtaining the facts necessary to certify capacity based on the actual and projected flows from Maxatawny.  Kutztown did not have access to this information because Maxatawny refused to convey the facility to a joint authority as contemplated by the 2006 Agreement.  Further, the Engineer Letter did not use the word certify or otherwise indicate its certainty.

Notably, this Court does not have the benefit of an appellate brief from DEP explaining its rationale for relying on the Engineer Letter as a written certification.  DEP elected not to participate in this appeal and defend its interpretation.[10]

_____

[8] Several recent decisions of this Court involve efforts by Maxatawny to compel universal connections to its sewer system.  See, Maxatawny Twp. v. Karaisz (Pa. Cmwlth., No. 68 C.D. 2015, filed September 25, 2015); Maxatawny Twp. v. Prikis, (Pa. Cmwlth., No. 2229 C.D. 2014, filed September 17, 2015).  Therefore, new connections continue.

[9] Of note, Kutztown argues the evidence before the EHB shows that Maxatawny has over-allocated its capacity in the Interceptor Main.  See Intervenor Kutztown's Br. at 23-27.  Therefore, it appears the dispute regarding capacity remains unresolved.

[10] However, in its brief to the EHB (included in the Reproduced Record at 584a-616a), DEP did not contend that the Engineer Letter confirmed future capacity.

15

### b. Sufficient Information on Projected Capacity

Maxatawny contends DEP did not err in accepting the Engineer Letter as a certification because DEP had sufficient information regarding projected capacity to overlook the lack of any certification of future capacity by Kutztown. Its contention is premised on the purported fact that the Interceptor Main has sufficient capacity to handle the Project based on current permits and its Act 537 Plan. This misstates the issue as adequacy of capacity; the real issue is adequacy of the permittee's certification.

After performing its own investigation, DEP determined existing and future capacity exists in the Interceptor Main to sustain the current and anticipated flow from the Project. However, that independent determination does not satisfy the permittee certification requirement. Indeed DEP's determination "that the existing collection, conveyance and treatment system does not have an existing hydraulic or organic overload or 5-year projected overload" fulfills a separate criterion in the Regulation, 25 Pa. Code §71.51(b)(2)(**ii**). While the language is very similar to the permittee certification in subsection (b)(2)(**iii**), all four criteria must be met to qualify for an exemption.

Involvement of the permittees is separately required in part to assure a collaborative process. As the EHB properly determined, the current exemption process was not collaborative. By asserting that DEP's separate capacity determination suffices, Maxatawny ignores the plain language of the permittee certification provision.

16

### c. Other Circumstances

The EHB held the Regulation required certification from Kutztown.[11] The EHB determined DEP's acceptance of the Engineer Letter as a certification of capacity was manifestly unreasonable based on the facts surrounding its creation. In this regard, the EHB noted the Engineer Letter was not addressed to DEP, Maxatawny or Advantage. Borough Manager sent the Engineer Letter as an enclosure to a letter advising that Kutztown needed additional information regarding allocation of capacity and anticipated connections. R.R. at 194a.

Further, the EHB found, to the extent DEP suggested an unwilling permittee may be bound by an internal letter authored by its engineer, without authorization by the municipality that the letter serve as a certification, its interpretation was "clearly erroneous." EHB Op. at 16. This Court agrees.

### 4. Summary

In sum, because Kutztown did not verify capacity or projected overloads in the Engineer Letter, DEP erred in deeming the Engineer Letter a "certification." DEP's interpretation of the Regulation was clearly erroneous in that it ignored the Regulation's plain language. Thus, the EHB did not owe deference to DEP's interpretation.

---

[11] Maxatawny also asserted that Kutztown's certification is unnecessary because the Advantage Project is not located within Kutztown. However, Advantage would use Kutztown's Interceptor Main. Thus, as permittee of that conveyance, Kutztown's certification is required.

## B. Basis for Use of Interceptor Main

Maxatawny criticizes the EHB as elevating form over substance when it did not affirm DEP's approval of the Exemption Request. It argues Maxatawny may use the Interceptor Main regardless of the validity of the 2006 Agreement, based on its Act 537 Plan and on other unappealed permits. Therefore, the EHB erred in considering the 2006 Agreement and Kutztown's reservations in certifying capacity based on that Agreement.

Kutztown counters that Maxatawny's allocation is predicated on the validity of the 2006 Agreement. Thus, if Maxatawny nullifies the 2006 Agreement, it loses its right to use Kutztown's Interceptor Main. Further, Kutztown maintains it has an interest in assuring that capacity of the Interceptor Main is not exceeded because excess sewage will flow to its sewage treatment facility, risking an overload.

To support its contention that the EHB elevated form over substance, Maxatawny cites Patterson v. Department of Environmental Protection, 1996 EHB 550 (Pa. Envtl. Hr'g Bd. 1996). See Pet'r's Br., Appendix C. That case pertains to the use of old versus then-current DEP forms. DEP processed sewage planning modules using the old forms submitted, which contained more information than the current forms.

As there are no substantive similarities between Patterson and this case, Maxatawny's citation to it is puzzling. Maxatawny asserts that the EHB in Patterson found a regulation satisfied based on the content of the communication required by the regulation as opposed to its form.

18

Requiring formalities for a writing to qualify as a "certification" is not the same as requiring use of a specific form. Here, the EHB acknowledged "no particular form" of certification was required. EHB Op. at 15. Ultimately, the EHB found the certification deficient under the Regulation because it lacked the requisite content. Thus, the EHB's decision here is consistent with Patterson to the extent it holds that the content of a submission governs whether regulations are met, regardless of using a specific form.

Maxatawny then contends the EHB erred in disregarding that the use of the Interceptor Main is set forth in its Act 537 Plan, revised in 2007. It argues the EHB should have relied on prior submissions that DEP used to confirm capacity. We reject this argument.

The EHB did not err in not relying on the property planning for the Project, which dates back to 2007. The regulatory scheme is designed to ensure current information. As an alternative to the sewage module process, which is "in effect an 'amendment' to [Maxatawny's] Act 537 plan," a municipality may request an exemption for new development. Pet'r's Br. at 40. A municipality may not rely on existing plans or permits or other filings that show past allocations and past use. Thus, the EHB did not err by failing to rely on documents that pre-date the Exemption Request.

Maxatawny draws this Court's attention to nothing in the statutory or regulatory scheme that indicates a permittee is compelled to certify capacity. Collaborative certification of capacity is a precondition to an exemption. DEP

cannot waive the precondition, and an exemption request may not be granted without it. The Regulation does not mandate that a permittee provide it.

The parties are currently abiding by the allocation of 150,000 gpd to Maxatawny under the 2006 Agreement. Presuming that allocation continues, Kutztown raised a question of whether Maxatawny will exceed that allocation given the additional connections and proposals for development. That remains a legitimate concern precluding Kutztown's certification at this time. Therefore, the EHB did not err in considering it.

## C. Substantial Evidence

Maxatawny argues the EHB's adjudication disregarded substantial evidence and is not supported by the record. Specifically, Maxatawny claims the EHB disregarded the proof of capacity in prior submissions to DEP. Maxatawny also asserts the evidence did not show DEP abused its discretion.

Kutztown responds that the evidence shows Kutztown did not issue a certification. The evidence reflects DEP acted unreasonably in accepting the Engineer Letter in lieu of a certification when its source was suspect, and its contents were not definitive.

On appeal from a DEP decision, the party protesting the decision "has the burden to show, on the record produced before the EHB," that DEP's action "was arbitrary or was an abuse of discretion." Foundation Coal Res. Corp. v. Dep't of Envtl. Prot., 993 A.2d 1277, 1288-89 (Pa. Cmwlth. 2010) (citation

20

omitted). Questions of conflicting evidence, witness credibility, and evidentiary weight are within the exclusive discretion of the EHB as the fact-finding agency, and may not be disturbed on appeal. Id.

Here, the evidence reflected no intent by the drafter of the Engineer Letter to provide a certification. The evidence also reflected no authorization by Kutztown for its engineer to certify capacity, or to submit the Engineer Letter as a certification of capacity. R.R. at 43a. The testimony is consistent with the content of the Borough Manager's cover letter, reflecting that certain matters needed clarification as a prerequisite for certification. R.R. at 21a, 23a, 24a, 41a, 194a.

Maxatawny alleges substantial evidence contradicts two of the EHB's critical findings: (1) DEP should not have considered Jenkins an official of Kutztown; and, (2) DEP did not have sufficient information to approve the exemption. Notably, Maxatawny does not explain where in the record to find the evidence in support of this argument.

An engineer's letter could qualify as an official certification provided it is authorized and it contains the requisite information. Here, the evidence established Kutztown did not authorize a certification. R.R. at 23a, 41a, 114a-15a. As to the sufficiency of information, Maxatawny emphasized DEP had the requisite technical information to assess adequacy of capacity. Nevertheless, without a permittee certification, DEP lacked the legal authority to approve the Exemption Request. 25 Pa. Code §71.51(b)(2)(iii).

21

The EHB did not err in disregarding evidence of alleged actual capacity. The existence of current or projected capacity is not at the heart of this dispute. The legal qualification of the Engineer Letter as a permittee certification was the central issue before the EHB. Technical evidence regarding the capacity of the Interceptor Main is irrelevant to whether the Engineer Letter satisfied the permittee certification criterion in the Regulation. Likewise, the evidence Maxatawny presented regarding the authorization to use the Interceptor Main in other permits is immaterial.

For all these reasons, we find the EHB's adjudication is supported by substantial evidence.

### D. Unclean Hands/Equitable Relief

Lastly, Maxatawny asserts the EHB erred in failing to consider Kutztown's alleged improper motive in withholding certification. Maxatawny contends Kutztown should be precluded from withholding certification when it previously approved other uses of the Interceptor Main for other developments. Maxatawny argues equitable principles favor depriving Kutztown of relief under the doctrine of unclean hands.

Kutztown does not directly respond to this argument. Kutztown explained it may withhold approval of certification because, ultimately, it becomes responsible for treating any excess sewage above Maxatawny's capacity allocation.

The doctrine of unclean hands is an equitable defense. Our Supreme Court described the unclean hands doctrine as follows: "The bar of unclean hands is applicable in Pennsylvania only where the wrongdoing of the plaintiff directly affects the equitable relationship subsisting between the parties and is directly connected with the matter in controversy." Stauffer v. Stauffer, 351 A.2d 236, 244-45 (Pa. 1976).

Even an improper motive would not change the outcome here. The appeal to the EHB did not implicate equity. As Kutztown did not seek equitable relief before the EHB, the unclean hands doctrine does not apply.

Further, matters of equity are beyond the EHB's jurisdiction. Pequea Twp., 716 A.2d at 686 ("the [EHB] is not statutorily authorized to exercise judicial powers in equity."); Marinari v. Dep't of Envtl. Res., 566 A.2d 385 (Pa. Cmwlth.1989). Thus, the EHB did not err in failing to consider an equitable defense.

### III. Conclusion

DEP's interpretation of the Regulation was not entitled to deference here because its construction of "certification" in the Regulation was clearly erroneous. Accordingly, the EHB did not abuse its discretion or violate the law when it reversed DEP's approval of the Exemption Request, sustaining Kutztown's appeal.

_____
ROBERT SIMPSON, Judge

23

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maxatawny Township,                     :
                        Petitioner      :
                                        :     No. 2369 C.D. 2014
                v.                      :
                                        :
Department of Environmental             :
Protection,                             :
                        Respondent      :

# **O R D E R**

**AND NOW**, this 16th day of October, 2015, the order of the Environmental Hearing Board is hereby **AFFIRMED**.

_____
ROBERT SIMPSON, Judge